GILBERT R. BOLEN, APPELLEE, v. A. A. WRIGHT ET AL., APPELLANTS.

FILED APRIL 24, 1911. No. 16,403.

1. **Usury, Defense of by Partners.** Usury may be pleaded by one copartner who, for a consideration, has assumed the payment of a partnership debt, and the debt of his copartner, for which he was personally liable as a member of the firm and as surety, although after the dissolution of the partnership he has renewed the note tainted with usury by the execution of one in his own name.

2. Notes: Bona Fide Purchaser: Burden of Proof. Where usury in the original transaction for which a negotiable promissory note has been given is proved, a party who claims to have purchased the note before maturity must assume the burden of proof to show that he is a *bona fide* purchaser for value, before maturity, and without notice.

3. Usury: Relief in Equity. When a borrower goes into a court of equity to seek relief from an usurious contract, he should be required to pay the amount of the principal and lawful interest as a consideration for such relief, and it is the duty of the court in granting him relief to render a decree or judgment for the actual amount of the loan, with 7 per cent. interest thereon.

Appeal from the district court for Douglas county: Alexander C. Troup, Judge. *Reversed with directions.*

*Lambert & Winters* and *W. R. Patrick,* for appellants.

*T. A. Hollister, contra.*

Barnes, J.

Appeal from a decree of the district court for Douglas county enjoining the collection of a promissory note and canceling a chattel mortgage given to secure its payment. The defendants contend that the trial court erred in allowing the plaintiff to interpose the plea of usury, and this question will be determined first in the order of the assignments.

It appears that the plaintiff and his brother, Ernest Bolen, were engaged as partners in the transfer business in South Omaha, Nebraska, under the name and style of Bolen Brothers, and on the 15th day of June, 1907, borrowed of the defendant Wright the sum of $200, and gave a note therefor for $210; the $10 being for interest thereon at the rate of 5 per cent. a month. At the same time Ernest Bolen borrowed $300 of the said defendant, and executed his individual note therefor for the sum of $315; the $15 being for interest at the rate of 5 per cent. a month. These notes were renewed from time to time and payments were made on them; the rate of interest charged

each time and in all of the transactions being 5 per cent. a month until the amount of money received by the firm and by Ernest Bolen from the defendant Wright was the sum of $870. On the 4th day of January, 1908, the whole transaction was merged in a note for $913.50 signed by Bolen Brothers, and Ernest Bolen, in which was included the sum of $43.50 as interest at the rate of 5 per cent. a month. This note was secured by a chattel mortgage upon the property of the Bolen Brothers Transfer Company. On the 1st day of May, 1908, Gilbert R. Bolen purchased from his brother, Ernest, his share in the Bolen Brothers Transfer Company, and has since conducted the business under the name of the Gilbert R. Bolen Transfer Company. On the 17th day of June, 1908, Gilbert gave Wright a note for the sum of $827.90, and executed a chattel mortgage on his transfer company property securing the same. This note was a renewal of the note for $913.50, less a credit of $39.40 which also included interest at 5 per cent. a month. This note was renewed October 19, 1908. Thereafter, on the 15th day of February, 1909, plaintiff executed and delivered to the defendant Wright a new note for $665.25, secured by a chattel mortgage on his property, which last named note and mortgage was a continuation of all of the former transactions, and was the balance due on the note given October 9, 1908, for the sum of $827.90 after deducting a payment of $162.35. It thus appears without question that the transaction from its inception, and in all of its parts, was tainted with the vice of usury.

It was claimed by the defendants that the plaintiff having purchased the interest of his brother in the transfer company, and having assumed the payment of his brother's share of the indebtedness in that transaction, is now estopped to plead usury, and is as a matter of law liable for the whole amount of the principal, together with the usurious interest as evidenced by the last note of $665.25, which is the note in suit. In support of this claim defendants have cited a number of cases, com-

mencing with *Cheney v. Dunlap*, 27 Neb. 401, and ending
with *People's Building, Loan & Savings Ass'n v. Pickard*,
2 Neb. (Unof.) 144. From an examination of those cases,
it appears that the controlling point in each of them was
that the person seeking to interpose the plea of usury was
a stranger to the usurious contract, and it was held: "A
mere purchaser of the equity of redemption, being neither
surety nor privy, cannot avail himself of the usurious
contract of his grantor to which he is a stranger and plead
usury in such contract." *Cheney v. Dunlap, supra.*

It must be observed, however, in the case at bar that
the plaintiff was not a stranger to the usurious transac-
tion. At the time he purchased his brother's interest in
the transfer company he was liable for the whole amount
of the indebtedness as a member of the firm, and as
surety for his brother. This case, therefore, should be
ruled by *Beals v. Lewis*, 43 Ohio St. 220. In that case
it appeared that A, B, and C were partners, and executed
a promissory note to D, embracing usurious interest, and
also executed to him a mortgage on real estate to secure
the note. A conveyed to B and C his interest in the
partnership property, including the real estate mortgaged;
B and C agreeing in consideration thereof to pay the firm
debts, including the debt to D. It was held: "That B
and C were not estopped to assert such usury, in an action
by D for the sale of the mortgaged premises." In *Ma-
chinists' Bank v. Krum*, 15 Ia. 49, it was said: "In an
action against a copartnership upon a note tainted with
usury, either partner may set it up as a defense, without
the consent of his copartners. The defense may also be
pleaded by one copartner who has for a consideration
assumed the payment of the copartnership debt, and who
has, under the dissolution of the copartnership renewed
the note tainted with usury, by the execution of a new
one, in his own name. *Aliter* as to a third party, who,
for a consideration, has assumed the payment of a note
thus tainted." This principle also seems to have been
recognized by this court in *National Mutual Building &*

*Loan Ass'n v. Retzman,* 69 Neb. 667. We are therefore of opinion that the trial court rightly held that the plaintiff could avail himself of his plea of usury.

There is a further contention that the district court erred in finding that the defendant Caldwell was not a purchaser of the note in question before due, in good faith, and without notice of its usurious nature. We have read the testimony relating to this phase of the transaction, from which it appears that the defendants have for years occupied adjoining offices; that Caldwell had full knowledge of the chattel loan business conducted by the defendant Wright, and it is a significant fact that immediately after he claims to have purchased the note and mortgage in question, and some two months before it became due, without any apparent excuse therefor, he placed the same in his attorney's hands for immediate collection. Again, at the trial of this case he displayed no interest as to its result; and, considering his conduct in connection with the conduct of defendant Wright immediately before he claims to have sold the note in question to his codefendant, we are of opinion that Caldwell did not sustain the burden of proof which the law requires of him in such cases. Where usury in the original transaction for which a negotiable promissory note has been given is proved, a party who claims to have purchased the note before maturity must assume the burden of proof to show that he is a *bona fide* purchaser for value, before maturity, and without notice. *Darst v. Backus,* 18 Neb. 231; *Colby v. Parker,* 34 Neb. 510; *Knox v. Williams,* 24 Neb. 630; *McDonald v. Aufdengarten,* 41 Neb. 40.

Finally, it is contended by the defendants that, plaintiff having brought this action in equity for a cancelation of the note and mortgage in question, he should be required to do equity by paying the amount of money actually borrowed with the legal rate of interest thereon. We think the rule is that, where a borrower goes into a court of equity to seek relief from a usurious contract, he should be required to pay the amount of the principal and lawful

interest as a condition for such relief, and it is the duty of the court in granting him relief to render a decree for the actual amount of the loan, with 7 per cent. interest thereon. *Eiseman v. Gallagher*, 24 Neb. 79. The plaintiff, having brought this action in a court of equity, should be required to do equity by paying the amount of money which was actually received from the defendant Wright, together with interest thereon at the rate of 7 per cent. per annum.

This holding requires us to ascertain the interest computed at the legal rate upon $870, which it is conceded was the amount of money actually furnished to the plaintiff and his brother, Ernest, by the defendant Wright, and determine the amount legally due to the defendants; to compute the amount of the payments which have been made thereon by the plaintiff, and thus ascertain the balance due upon the note and mortgage in question. We have examined the evidence with care, and are satisfied that the computations of the district court are correct if no interest is allowed. By allowing defendants to recover interest at the legal rate, it appears that at the time the decree was rendered by the district court there was due to the defendants the sum of $67.46. It follows that the judgment appealed from should be reversed, and it is so ordered, and the cause is remanded to the district court, with directions to enter a judgment in favor of the defendants and against the plaintiff for $67.46, with legal interest thereon from the date of the former decree, and, upon the payment of that sum by the plaintiff to the clerk of the district court for the benefit of the defendants, the decree shall become operative as a payment of the note and a discharge and satisfaction of the chattel mortgage in question herein; and it is further ordered that each party shall pay the costs incurred by him in this court.

JUDGMENT ACCORDINGLY.