BIRD FINANCE CORP. v. LAMERSON.

1. BILLS AND NOTES—USURY—INFIRMITIES.

A note which is in part usurious at time of delivery to the original payee is not free from infirmities since such part is void for want of consideration (2 Comp. Laws 1929, § 9301).

2. SAME—NOTICE OF INFIRMITIES—HOLDER IN DUE COURSE—USURY.

Indorsee of promissory note which had notice of fact that at least a portion of the note was void for want of consideration because of usury had notice of an infirmity in the instrument and is not a holder in due course (2 Comp. Laws 1929, § 9301).

3. SAME—ONE NOT A HOLDER IN DUE COURSE—DEFENSES.

A negotiable instrument in the hands of one not a holder in due course is subject to the same defenses as if it were a non-negotiable instrument, or as if the suit had been instituted by the original payee (2 Comp. Laws 1929, § 9307).

4. SAME—USURY—PURCHASER WITH NOTICE OF INFIRMITY—DE-
   FENSES.

   A note given for a usurious amount should be treated as being
   subject to an infirmity and a purchaser thereof with notice or
   knowledge of such infirmity is not a holder in due course en-
   titled to protection against equities and defenses available
   against the original payee but takes the instrument subject
   to such equities, defenses, setoffs and counterclaims as would
   be available as between the original parties (2 Comp. Laws
   1929, §§ 9301, 9307).

5. SAME—PURCHASER NOT A HOLDER IN DUE COURSE—DEFENSES.

   If the purchaser of an instrument is not a holder in due course,
   other defenses than that of which he had knowledge are
   available (2 Comp. Laws 1929, § 9307).

   BOYLES, J., dissenting.

Appeal from Kent; Verdier (Leonard D.), J.
Submitted June 3, 1942. (Docket No. 16, Calendar
No. 41,485.) Decided November 25, 1942.

Assumpsit by Bird Finance Corporation, a Mas-
sachusetts corporation, against Anna Lamerson and
another on a promissory note. Judgment for plain-
tiff. Defendants appeal. Reversed and new trial
granted.

*Cleland & Snyder (Winston C. Moore,* of coun-
sel), for plaintiff.

*Earl F. Phelps,* for defendants.

BOYLES, J. *(dissenting).* This suit is brought on a
promissory note for $968. Plaintiff is a Massachu-
setts corporation, incorporated for the purpose of
dealing in commercial paper, with its principal office
at East Walpole, Massachusetts, and a branch office
at 1472 West 76th street, Chicago, Illinois. It is not
authorized to do business in Michigan and was or-
ganized primarily to finance jobs done with imita-

tion brick siding manufactured by Bird & Son, Inc. Its capital stock is wholly owned by Bird & Son, Inc., which is likewise a Massachusetts corporation, engaged in the manufacture of composition roofing and imitation brick siding, having a factory at East Walpole, Massachusetts, and a branch factory at 1472 West 76th street, Chicago, Illinois. Bird & Son, Inc., is authorized to do business in Michigan, has several agents in Michigan selling its products. Plaintiff is the financing corporation for Bird & Son, Inc., the manufacturing corporation. Their out-of-state offices are together; some of the officers and employees of Bird & Son, Inc., have part duties for the finance corporation.

The defendant Anna Lamerson is an elderly widow owning a small home in Grand Rapids, Michigan, incumbered by a mortgage. Defendant Frank Novak was a roomer and boarder at Mrs. Lamerson's, with no title or interest in the house and property repaired.

On April 7, 1937, one Alfred Smith, a resident of Chicago, made an arrangement with plaintiff, Bird Finance Corporation, and Bird & Son, Inc., in Chicago, whereby Smith was to go to Grand Rapids and obtain jobs putting Bird composition imitation brick siding on houses, and accept paper for the jobs; plaintiff, Bird Finance Corporation, was to take the paper, and Bird & Son, Inc., was to furnish the materials. The proposition was to sell materials manufactured by Bird & Son, Inc., and use the plaintiff, Bird Finance Corporation, as a medium for discounting the paper received as a result of the sales. Harold W. Altman, western credit manager for Bird & Son, Inc., who was also assistant treasurer of plaintiff, Bird Finance Corporation, made the arrangement with Smith. Previously, on March 22, 1937, Smith had filed in the office of the county clerk of Kent county a certificate under

the assumed name act,* as the Federal Home Improvement Company, giving his address as the Rowe Hotel (Grand Rapids). On April 12, 1937, Smith and one Eli Marcus filed a certificate of copartnership under the above name and the first filing by Smith was withdrawn. Later, on June 3d, Smith again filed under the assumed name act, using the same name of Federal Home Improvement Company, and the copartnership filing was discontinued.

Smith called at defendant Lamerson's home early in April, 1937, said that he wished to get started in Grand Rapids in the business of putting on imitation brick siding, that he would like to start with her home and make it the "model" home which he could show others, that for every additional job he could obtain he would give her $10, would guarantee two jobs a month, and that he would make the payments on her job only $26.89 a month, she would receive $20 a month from him, leaving only a balance of $6.89 per month for her to pay. He drew up a paper to that effect which she signed. It was a "request" by Mrs. Lamerson, as owner, to Smith's "Federal Home Improvement Company," called the "contractor," to furnish the labor and materials for re-siding the outer walls of her home with "Bird Bric." In it she agreed to pay $986 in equal monthly instalments of $26.89 each, and it contained the following recital:

"For every job obtained from Anna Lamerson of the above address we agree to pay her the sum of $10. This agreement to run for a period of three years from date."

Smith left a copy of this order with her. A few days thereafter Smith returned and said that the company would not accept the contract unless there

---

* See 2 Comp. Laws 1929, § 9825 et seq., as amended by Acts Nos. 272, 274, Pub. Acts 1931 (Comp. Laws Supp. 1935, § 9825 et seq., Stat. Ann. § 19.821 et seq.),—Reporter.

were two names on it and he presented to her for her signature another order which was styled "Bird Finance Corporation—Non-Recoupe Finance Plan C4039—Estimate and Agreement," which she signed without reading after Smith explained that it was just the same as the other paper, and he asked Frank Novak (defendant), a boarder who happened to be present, to sign the order also so as to have two names on it in order to make it acceptable to the company in Chicago, Illinois. Smith did not leave a copy of this paper with her but it turned out to be a different order addressed to the Federal Home Improvement Company asking it to furnish the labor and materials and put on the imitation brick siding in a good, workmanlike manner, for $800. It provided that Mrs. Lamerson was to give her note for $968, and that:

"The giving of said note shall also be evidence that the material and workmanship furnished by you is satisfactory."

The order provided that the agreement was subject to the approval of plaintiff, Bird Finance Corporation. Defendants claim that the difference between the cost of the job, $800, and the $968 for which she was to give a note, was to cover the interest at seven per cent. for three years, the time the note was to run. Smith mailed this order to the plaintiff, Bird Finance Corporation, at Chicago, it was dated April 17, 1937, received on April 20, 1937, by Harold W. Altman, western credit manager for Bird & Son, Inc., and assistant treasurer of the Bird Finance Corporation, who checked Mrs. Lamerson's credit and then accepted the contract.

Workmen came and put on the imitation brick siding. According to credible testimony, the total

cost of the job done in a good and workmanlike manner should have been $279, for which plaintiff was to be paid $968, a difference or profit of $689; also it was proven that the work was defective and not properly done.

After the job was finished, Smith brought some papers for Mrs. Lamerson and Frank Novak to sign, stating that they wanted a statement that the work was done. The defendants signed the papers, relying on Smith's word as to their contents. One of them was the note now sued upon, payable to Federal Home Improvement Company, later negotiated to plaintiff. Defendants claim they did not know they had signed a promissory note until they received notice from the plaintiff, Bird Finance Corporation, relative to making the payments. After making two or three payments, Mrs. Lamerson learned that the cement substance supposed to be used on the job had been left out and hauled away, and rain was coming through onto her paper inside. Mrs. Lamerson wrote the Bird Finance Corporation on October 18, 1937, about the defective workmanship and that she would refuse to make further payments until it was corrected. In several letters sent by plaintiff to Mrs. Lamerson or her attorney and written on Bird Finance Corporation letterheads, there were statements referring to W. H. Lupton, a resident of Grand Rapids, as "our representative," or "our sales representative." One such letter suggested that the attorney consult Mr. Lupton. Lupton was produced as a witness and testified that he had been employed by Bird & Son, Inc., that he was not and had never been employed by plaintiff, that he had never received any compensation from plaintiff, that he had performed services for Mr. Altman, an officer of Bird & Son

Inc., under the impression that it was for Bird & Son, Inc., although the requests sometimes came on Bird Finance Corporation letterheads.

Smith and Marcus did 20 other jobs in Grand Rapids but we have searched the record in vain for any support of defendants' claim that Mrs. Lamerson was paid only one $10 payment.

The lower court found that the defendants had been defrauded, but that plaintiff was entitled to a judgment because it was a holder in due course.

Defendants rely upon two defenses to defeat recovery on the note: (1) That plaintiff cannot prosecute this suit, not having been authorized by the secretary of State to do business in this State as a foreign corporation; (2) that plaintiff is not a holder in due course (a) because it is chargeable with fraud; (b) because the note is usurious. These questions will be considered *seriatim*.

(1) "It shall be unlawful for any foreign corporation to carry on its business in this State until it shall have procured from the secretary of State of this State a certificate of authority for that purpose." Act No. 327, § 93, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135–93, Stat. Ann. § 21.94). (For transfer of powers and duties from secretary of State to corporation and securities commission, see Act No. 13, § 3, Pub. Acts 1935 [Comp. Laws Supp. 1940, § 9769-3, Stat. Ann. § 19.783].)

That plaintiff is a foreign corporation and does not have a certificate of authority to do business in Michigan is conceded. Plaintiff claims it was not doing business in this State. Defendants claim that under our decisions plaintiff was doing business in Michigan. This is an affirmative defense, hence the burden of proving it rests on defendants. Court Rule No. 23, § 3 (1933); *H. H. King Flour Mills Co.*

v. *Bay City Baking Co.*, 240 Mich. 79. The facts and circumstances are as follows: Plaintiff is a Massachusetts corporation with offices in that State and in Chicago, Illinois. It has no office or warehouse in Michigan. Its business is to buy, acquire, collect, deal in, and dispose of promissory notes and accounts receivable from the business done by Bird & Son, Inc. It was organized primarily to finance jobs done with Bird & Son, Inc., products. Plaintiff's business in Michigan was transacted by and from its Chicago office. Either the plaintiff or Bird & Son, Inc., had a Mr. Lupton as a "representative," whose residence was in Grand Rapids, who contacted Mrs. Lamerson or her attorney in regard to making repairs to her job, and collecting the instalments. Except for this circumstance, all contact between plaintiff and defendants and between plaintiff and the Federal Home Improvement Company was by mail between Grand Rapids and Chicago. The note on which suit was brought was executed by defendants to the Federal Home Improvement Company as payee, and indorsed over by it to plaintiff. Plaintiff bought about 20 accounts for jobs in Grand Rapids, and 500 or 600 in all from various cities in the State of Michigan. While plaintiff and Bird & Son, Inc., occupy the same offices and have common employees to some extent, their books and financial operations are separate.

In *Republic Acceptance Corp.* v. *Bennett,* 220 Mich. 249, relied upon by defendants, a foreign finance corporation was held to be doing business in this State where it had a Michigan office with a local manager, a large amount of business was done through this office, and all of the business with Michigan customers was done with its manager through its Michigan office. The facts distinguish that case from the case at bar.

In *Hemphill* v. *Orloff*, 238 Mich. 508 (58 A. L. R. 507), also relied upon by defendants, a foreign finance corporation (an investment trust) solicited business in this State through a traveling solicitor who resided in this State, the corporation financed automobile dealers by purchasing their customers' paper secured by chattel mortgages, the corporation's name appeared on an office door, in the telephone directory and the city directory, a local representative passed on the paper and handled the Michigan transactions, received the notes and mortgages, recorded and renewed some of them, discharged others, and made collections. It was held that this corporation was doing business in Michigan. Again, the facts readily distinguish that case from the case at bar.

Defendants have not sustained the burden of proving that plaintiff is doing business in this State and so far as this record discloses, plaintiff may maintain suit in our courts. See *J. B. Simpson, Inc.*, v. *O'Hara*, 277 Mich. 55; *J. B. Simpson, Inc.*, v. *State Board of Tax Administration*, 297 Mich. 403.

(2) Is plaintiff chargeable with fraud, therefore not a holder in due course?

(a) The instrument on which suit is brought is a negotiable instrument and was acquired by plaintiff before maturity and for value received. Is plaintiff chargeable with fraud in the procurement of the note? For the purposes of this case we are willing to accept the conclusion of the circuit judge that the note was procured in the first instance by fraud. The record is convincing that Smith and Marcus, doing business under the assumed name of Federal Home Improvement Company, deceived Mrs. Lamerson, although we cannot overlook the lack of proper caution shown by Mrs. Lamerson in relying on oral representations and promises by Smith, and in signing a second order, a promissory note, and a

statement that the work was satisfactory, without reading them. After the work was done she signed the following statement which was forwarded to plaintiff:

"I/we the undersigned hereby certify and affirm that the work, improvements, etc., described in the agreement executed by and between
        "Federal Home Improvement Company,
                "(Contractor's Name)

and undersigned, the total cost of which is $968.00 Nine hundred sixty eight and no/100 ...... dollars were completed in accordance with the terms of the agreement and to my/our complete satisfaction on May 8th, 1937.
                        "(Date Work Completed)

"This certificate has been signed by me/us with the knowledge that it is to be used to induce Bird Finance Corporation to discount my/our note given in accordance with said agreement and I/we hereby authorize its use for that purpose.
        "Signed this 8th day of May, 1937.
            (Signed) "ANNA LAMERSON"

Assuming that Mrs. Lamerson was defrauded by Smith and Marcus, doing business as Federal Home Improvement Company, although plaintiff is to be deemed prima facie a holder in due course, the burden is on the plaintiff to prove that it is. The statute (2 Comp. Laws 1929, § 9308 [Stat. Ann. § 19.101]) provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a

party who became bound on the instrument prior to the acquisition of such defective title.''

Plaintiff has the burden of proving that it purchased the note in good faith, for value, before notice of the infirmity was communicated to it. *Drovers' National Bank* v. *Blue,* 110 Mich. 31 (64 Am. St. Rep. 327); *Stevens* v. *Venema,* 202 Mich. 232 (L. R. A. 1918 F, 1145); *Republic National Bank* v. *Bobo,* 227 Mich. 6; *Miller* v. *Commercial State Savings Bank,* 227 Mich. 316; *Fox River Valley State Bank* v. *East,* 229 Mich. 698; *Newall* v. *Bridges,* 251 Mich. 384; *Mercantile Discount Corp.* v. *Henderson Milling Co.,* 259 Mich. 88. Were we called upon to consider whether Bird & Son, Inc., a foreign corporation doing business in this State, and the concern that manufactured and sold the product, was a party to the fraud, there would be more difficulty in finding it free from connection with the fraud. However, Bird & Son, Inc., is not the holder of the note. Does the fact that Bird & Son, Inc., owns all of the stock of the Bird Finance Corporation, that the two corporations office together and have some officers or employees who perform services for both corporations, sufficiently identify the plaintiff herein with the fraud imposed on Mrs. Lamerson by Smith and Marcus under the name of Federal Home Improvement Company? The fraud was not brought to the attention of either Bird & Son, Inc., or the Bird Finance Corporation, or any of their officers or employees, until after plaintiff acquired the note on which suit was brought, and after Mrs. Lamerson had paid several instalments on the note. There is no proof to the contrary. The most that can be inferred from the record is that Smith and Marcus put over a fraudulent transaction on Mrs. Lamerson, the knowledge of which was not communicated to or possessed by

the officers or employees of either Bird & Son, Inc., or plaintiff herein until some time after plaintiff acquired the note before maturity and for value. So far as the fraud is concerned, plaintiff is a holder in due course. We are unable to agree with defendants' contention that the plaintiff herein is not a holder in due course because of the fraud perpetrated on defendants by Smith and Marcus.

Defendants seek to connect plaintiff with Bird & Son, Inc., and Federal Home Improvement Company as joint adventurers in the perpetration of a fraud. Passing the question that this was not specifically set up as a defense in pleading or at the trial below (*Hornbeck* v. *Midwest Realty, Inc.,* 287 Mich. 230), the facts do not establish the essentials of a joint adventure. *Keiswetter* v. *Rubenstein,* 235 Mich. 36 (48 A. L. R. 1049); *Gleichman* v. *Famous Players-Lasky Corp.,* 241 Mich. 266; *Hathaway* v. *Porter Royalty Pool, Inc.,* 296 Mich. 90 (138 A. L. R. 955).

(b) Defendants lastly insist that plaintiff cannot be a holder in due course because the negotiable instrument is usurious. This claim is predicated on the fact that the original cost of the job was to be $800, that Mrs. Lamerson was to and did give her note for $968, payable in equal monthly instalments over a period of three years. Defendants say that the difference between the two amounts was intended to represent seven per cent. interest on the $800 for three years—that the time payments by monthly instalments were increased $168 over the original cash proposal of $800 to add seven per cent. interest. On this theory, the note would be usurious because the principal amount being reduced by monthly payments should correspondingly reduce the interest requirements as payments were made. Interest should be computed only on the balance of

principal remaining unpaid after each monthly payment; otherwise it would be usurious because it was figured at the maximum legal rate of interest in this State, seven per cent. The first payment ($26.89) should draw interest for only one month instead of three years.

However, plaintiff insists that the difference between $800 and $968 was the agreed difference between a cash price and a time price, and not an additional charge for interest in advance. If this claim is established by the record, the note is not usurious because a seller may charge more for goods sold on credit than for cash without rendering the contract usurious. *Hartwick Lumber Co.* v. *Perlman*, 245 Mich. 3; *Keefe* v. *Bush & Lane Piano Co.*, 247 Mich. 82. However, the record is barren of any proof that the additional charge was agreed upon as a time price. The original order or "request" signed by Mrs. Lamerson states that the agreed price for the labor and materials was $800, and in it Mrs. Lamerson agrees to execute and deliver a promissory note for $968, "which amount includes all charges by way of interest, discount or otherwise." There could be no "otherwise" charges, and obviously the $968 was intended to cover interest or discount over the cost price of $800. It is significant that this difference—$168—is exactly seven per cent. interest on $800 over the three-year period covered by the monthly instalments.

"Where the principal sum of a loan or debt is made payable in instalments at specified intervals within the full period of the loan, but interest for the full period on the whole principal sum is agreed to be paid, or is taken or withheld by the lender in advance, or is included in the face amount of the

note, the transaction is usurious, whether or not the rate of interest stipulated in the contract exceeds the maximum specified by law, if the sum so agreed to be paid or so deducted as interest is greater than interest at the lawful rate on the principal sum for the period for which it is actually lent." 66 C. J. p. 205.

See, also, cases cited.

Under these circumstances the note was usurious. However, in this State usury does not make the note itself void in the hands of an innocent purchaser for value and before maturity, as claimed by defendants. Defendants cite cases from other jurisdictions holding that there can be no innocent purchaser of a usurious note, either before or after maturity. Such is not the law of this State by statute:

"No bond, bill, note, contract or assurance, made or given for or upon a consideration or contract, whereby or whereon a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, shall be thereby rendered void; but in any action brought by any person on such usurious contract or assurance, except as is provided in the following section, if it shall appear that a greater rate of interest has been, directly or indirectly, reserved, taken or received, than is allowed by law, the defendant shall not be compelled to pay any interest thereon." 2 Comp. Laws 1929, § 9240 (Stat. Ann. § 19.12).

"Whenever it shall satisfactorily appear by the admission of the defendant, or by proof that any bond, bill, note, assurance, pledge, conveyance, contract, security, or any evidence of debt has been taken or received in violation of this act, the court shall declare the interest thereon to be void." 2 Comp. Laws 1929, § 9241 (Stat. Ann. § 19.13).

However, the plaintiff, Bird Finance Corporation, claims that it is a holder in due course and that it became the holder in good faith without actual notice that the note was given for, or upon a usurious contract. If so, plaintiff would be entitled to recover interest.

"In any action brought on any bill of exchange, or promissory note payable in money, and to order or bearer, originally given or made for, or upon any usurious consideration or contract, if it shall appear that the plaintiff became, in good faith, the indorsee or holder of such bill of exchange or promissory note, for a valuable consideration, before the same became due, then and in such case, unless it shall further appear that the plaintiff, at the time of becoming such indorsee or holder, had actual notice that such bill or note was given for, or upon a usurious consideration or contract, he shall be entitled to recover thereon, in the same manner, and to the same extent, as if such usury had not been alleged and proved." 2 Comp. Laws 1929, § 9237 (Stat. Ann. § 19.3).

The language of the statute clearly seems to fit the instant case and it would seem that the defense of usury would not be applicable as against plaintiff unless it can be said that plaintiff had actual notice of the usury. Such has been the uniform holding of this court. In *George N. Fletcher & Sons* v. *Alpena Circuit Judge,* 136 Mich. 511, HOOKER, J., writing for the majority, said:

"It is everywhere settled that usurious contracts are good in the hands of *bona fide* holders, and, as we have seen, our statute not only does not make them criminal, but it does not in terms prohibit them, and expressly declares them not to be void; and they are good as to all of the world, except the debtor, and he may waive his right to treat them otherwise by neglecting to plead usury."

In *Union Trust Co.* v. *Tonquish Temple Ass'n,* 247 Mich. 36, the defense of usury was interposed and this court said:

"In *Straus* v. *Elless Co.,* 245 Mich. 558, 565, it was said:

" 'That the bonds are negotiable instruments (*City of Adrian* v. *Whitney Central National Bank,* 180 Mich. 171 [Ann. Cas. 1916A, 600]), that the bondholders are holders in due course (2 Comp. Laws 1915, § 5995 *), of the bonds with benefit of the mortgage (41 C. J. pp. 673, 674; *Barnum* v. *Phenix,* 60 Mich. 388), and that the bonds are goods in their hands (*George N. Fletcher & Sons* v. *Alpena Circuit Judge,* 136 Mich. 511), and the indebtedness evidenced by the bonds therefore not open to the defense of usury, are questions not before the court.'

"These questions are here presented, and under the authorities stated it must be held that the defense of usury is not open to the defendants in this foreclosure proceeding."

The defense of usury cannot be urged against one who is otherwise a *bona fide* holder, to defeat recovery on the instrument.

"The affidavits in opposition to the motion for summary judgment established no defense against plaintiff bank, a *bona fide* holder, the note being negotiable and purchased in due course by plaintiff before maturity.

"The defense of usury cannot be urged." *Dart National Bank* v. *Burton,* 258 Mich. 283.

Did the plaintiff have actual notice that the note was given for, or upon a usurious contract? If so, under our previous decisions plaintiff cannot recover interest.

---

* 2 Comp. Laws 1929, § 9237 (Stat. Ann. § 19.3).—REPORTER.

Harold W. Altman, assistant treasurer for the plaintiff, testified that he received the document entitled "estimate and agreement." This document clearly stated that the Federal Home Improvement Company was to do the work for $800, that defendants were to give a promissory note for $968, "which amount includes all charges by way of interest, discount or otherwise, to be payable in 36 equal monthly instalments of $26.89 each, the first instalment to be paid one month from date of said note, and a like installment to be paid on the same day of each month following." Plaintiff accepted this proposal and then awaited the note and completion certificate. When these documents arrived the signatures were compared with the ones on the original order and plaintiff then purchased the contract. Thus, we have an officer of the plaintiff receiving an agreement which stated that a note in the amount of $968, to be paid in 36 monthly instalments, was to be given for the job. This agreement was usurious on its face, was actual notice of a usurious undertaking, and the knowledge of an officer of plaintiff corporation acting within the scope of his duties is the knowledge of the corporation. It is clear that the note sued upon was sent pursuant to the contract which plaintiff's officer had actual notice was usurious. Plaintiff cannot be allowed to recover interest.

A further question requires our consideration, namely, Should the Bird Finance Corporation be considered not a holder in due course because of the mere fact that it had actual notice of the usurious nature of the note? Obviously this goes to the merits of the entire suit because, as we have before stated, there was fraudulent procurement of the note and if the plaintiff is not a holder in due course,

the note is subject to all the defenses otherwise available to the maker, including the fraud.

2 Comp. Laws 1929, § 9301 (Stat. Ann. § 19.94), provides:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First, That it is complete and regular upon its face;

"Second, That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third, That he took it in good faith and for value;

"Fourth, That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

The only ground upon which it can be seriously urged that plaintiff is not a holder in due course within the meaning of this statute is that when plaintiff had actual notice of the usury at the time it took the note, this fact constitutes "notice of any infirmity in the instrument or defect in the title of the person negotiating it." If so, plaintiff cannot be considered a holder in due course by reason of the fourth requirement in the above-quoted definition. This result would follow, not because of the usury, but because of the fact that plaintiff had notice of the usury.

If there is merit in this contention, it cannot be because usury constitutes a "defect in the title." In this State, a defect in the title of a negotiable instrument is defined as follows:

"The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature

thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." 2 Comp. Laws 1929, § 9304 (Stat. Ann. § 19.97).

For the purposes of this case it may be conceded that there was a *defect in the title* of the one who negotiated the note to plaintiff. It does not necessarily follow that there was an infirmity in the instrument itself.

Plaintiff is a holder in due course unless the usury of which plaintiff had notice is to be considered an "infirmity in the instrument" within the meaning of the above-quoted statutory definition. If so, as we have said, plaintiff is not a holder in due course. Consecutively, the grounds for holding that plaintiff was not a holder in due course, wherefor the note would be open to all the defenses available to the original maker, would be as follows: (1) There was fraud in the procurement of the note; (2) plaintiff takes the note subject to that defense if not a holder in due course; (3) plaintiff cannot be considered a holder in due course if it had notice of any infirmity in the instrument; (4) usury constitutes an infirmity in the instrument; (5) plaintiff, having actual notice of the usury, is not a holder in due course, therefore cannot recover on the note because the fraud in the procurement would be a good defense against one who is not a holder in due course.

Decisions of other jurisdictions are at variance on the question whether notice of usury is notice of an infirmity in a negotiable instrument. The examined cases, generally, use interchangeably the terms "infirmity in the instrument" and "defect in the title." In some States, by earlier statutes, usury made the instrument void. In this State, by statute, the instrument is not void, and a *bona fide* holder

may even recover interest unless he had actual notice of the usury.  It is a fair inference that the purpose of this statute is to facilitate the transfer of negotiable instruments without destroying the incidents of negotiability.  In this State, one with notice of usury may purchase a usurious negotiable instrument, paying therefor the principal thereof or discounting the interest, and recover the amount paid.  As we have pointed out, "defect in the title" is defined by statute in this State, although "infirmity in the instrument" is not so defined.  Does usury constitute an infirmity in the instrument itself?

By a long line of decisions in this State, beginning with *Thurston* v. *Prentiss,* Walk. Ch. (Mich.) 529, and culminating in the statute, a contract is not void though tainted with usury.  By the same statute, the defense of usury cannot avail against a holder in due course unless such holder had actual notice of the usury.  Usury is a personal defense available only to the debtor, or one in privity with him, and may be waived.  *Barney* v. *Tontine Surety Co.,* 131 Mich. 192; *George N. Fletcher & Sons* v. *Alpena Circuit Judge, supra; Tuxedo Enterprises, Inc.,* v. *Detroit Trust Co.,* 272 Mich. 160.

The plain import of 2 Comp. Laws 1929, § 9240 (Stat. Ann. § 19.12), and 2 Comp. Laws 1929, § 9237 (Stat. Ann. § 19.3), heretofore quoted, is to the effect that one may be a holder in due course notwithstanding actual notice of usury.  Section 9237 plainly declares that one who is a holder in due course may recover on the instrument the same as if the usury had not been alleged and proved, unless such holder in due course had actual notice of the usury.  If actual notice of the usury prevents one from being a holder in due course, the statute is meaningless—it merely travels in a circle and gets

nowhere. We conclude that under our statutes and previous decisions, actual notice that a negotiable instrument is usurious does not by reason of such notice prevent the owner from being considered a holder in due course, except as to the interest.

The note has an acceleration clause whereby the entire amount becomes due and payable upon default of any instalment. Plaintiff is entitled to a judgment for $800, without interest, less the three payments made by Mrs. Lamerson ($80.67). The case should be reversed and remanded for entry of judgment for plaintiff in the sum of $719.33, without interest. Each party having prevailed only in part, no costs allowed.

CHANDLER, C. J. I cannot agree with the conclusion reached by Mr. Justice BOYLES, because that portion of the note in suit that represents usury is void for want of consideration. The note, therefore, at the time of its delivery to the original payee, was not free from infirmities.

The statute (2 Comp. Laws 1929, § 9301 [Stat. Ann. § 19.94]) provides in part,

"A holder in due course is a holder who has taken the instrument under the following conditions: * * *

"Fourth, That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Justice BOYLES' findings, which are amply supported by the record, are to the effect that the plaintiff at the time it acquired the note had knowledge that at least a portion thereof was void for want of consideration, being the amount of the usury included therein. Therefore, plaintiff had notice of this infirmity in the instrument.

In view of Justice BOYLES' findings, the note in suit in the hands of the plaintiff is subject to the

same defenses as if it were a nonnegotiable instrument, or as if the suit had been instituted by the original payee. This is in accordance with 2 Comp. Laws 1929, § 9307 (Stat. Ann. § 19.100), and cases decided in other jurisdictions having this same statute. The following cases all hold that a purchaser for value with notice of the usury is not a holder in due course. *Bowen* v. *Mount Vernon Savings Bank,* 70 App. D. C. 273 (105 Fed. [2d] 796); *Mollohan* v. *Masters,* 45 App. D. C. 414, certiorari denied, 242 U. S. 652 (37 Sup. Ct. 245, 61 L. Ed. 546); *Newcomb* v. *Niskey's Lake, Inc.,* 190 Ga. 565 (10 S. E. [2d] 51); *Bolen* v. *Wright,* 89 Neb. 116 (131 N. W. 185); *Daniels* v. *Bunch,* 69 Okla. 113 (172 Pac. 1086); *Keene* v. *Behan,* 40 Wash. 505 (82 Pac. 884).

We, therefore, hold that a note given for a usurious amount should be treated as being subject to an infirmity, and that a purchaser of such note with notice or knowledge of this infirmity should not be held to be a holder in due course so as to be entitled to protection against the equities and defenses which would be available against the original payee, but that he takes the instrument subject to such equities, defenses, setoffs and counterclaims as would be available as between the original parties.

The rule is well established that if the purchaser of the instrument is not a holder in due course, other defenses than that of which he had knowledge are available. 2 Comp. Laws 1929, § 9307 (Stat. Ann. § 19.100).

Entertaining this view, the judgment is reversed and the case remanded for a new trial, with costs to appellants.

NORTH, STARR, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred with CHANDLER, C. J. WIEST, J., did not sit.