MARY ALICE RADER, APPELLEE, V. EARLE M. BURNETT, SR., DOING BUSINESS AS BURNETT'S HOME TRAILER SALES, ET AL., APPELLANTS, IMPLEADED WITH DRIVE-IN REALTY COMPANY, A NEBRASKA CORPORATION, ET AL., APPELLEES.

122 N. W. 2d 747

Filed July 26, 1963. No. 35292.

Wilson & Barlow and John R. Doyle, for appellants.

Barney, Carter & Buchholz, for appellee Rader.

Heard before Simmons, C. J., Messmore, Yeager, Spencer, Boslaugh, and Brower, JJ.

Spencer, J.

This is an action brought in the district court for Lancaster County, Nebraska, by Mary Alice Rader, hereinafter referred to as plaintiff, against Earle M. Burnett, Sr., hereinafter referred to as Burnett, the Michigan National Bank, a Michigan corporation organized under the laws of the United States, hereinafter referred to as bank, Drive-In Realty Company, a Nebraska corporation, and Earle M. Burnett, Jr., defendants.

The purpose of the action is to declare a conditional sales contract on a house trailer null and void as usurious and in violation of the Nebraska Installment Loan Act, and for an accounting for all sums paid on the contract. The trial court dismissed the action as to the defendants Drive-In Realty Company and Earle M. Burnett, Jr., and found generally for the plaintiff. It entered judgment in favor of the plaintiff against Burnett and the bank for $4,340.78, interest in the amount of $771.58, and costs. The defendants, Burnett and the bank, have perfected their appeal to this court.

The house trailer in question was purchased by Dale L. Hobbs and Edythe Hobbs, husband and wife, hereinafter referred to as Hobbs, on a conditional sales contract dated March 4, 1958, from Burnett's Home Trailer Sales. The statement of the transaction in the contract is as follows:

"A  Cash Selling Price (Including
   Taxes, etc.)                    $4,400.00
 B  Insurance          ·              267.50  $4,667.50

| C | Down Payment: | | |
|---|---|---|---|
| | Cash | $1,107.50 | |
| | Trade-in Allowance | Nil. | $1,107.50 |
| D | Unpaid Balance of Purchase Price | | $3,560.00 |
| E | Finance Charge | | $1,068.00 |
| F | Deferred Balance | | $4,628.00" |

On the same date, the Hobbs signed a statement that they had been quoted a cash price and a deferred payment price, and that they rejected the cash price and chose to purchase by deferred payments. The conditional sales contract provided for payments of $77.13 per month for 60 months.

Subsequent to the sale, the contract was assigned to the defendant bank. Under date of March 4, 1958, the Hobbs executed a power of attorney, appointing any officer or employee of Burnett's Home Trailer Sales, Tad's Home Trailer Sales, or the Drive-In Realty Company, their attorney-in-fact, authorizing them to execute any papers relating to the transaction and to sign, endorse, or transfer the certificate of title. Five payments of $77.13 were made on the contract signed by Hobbs.

Plaintiff testified that she inspected the trailer on the Drive-In Realty Company trailer lot in May 1958, and was quoted a price of $3,900. An application to purchase, dated May 24, 1958, was signed by her, but nothing came of that transaction. On July 31, 1958, plaintiff and her former husband signed an application to purchase the trailer for $4,628, which provided for $200 down, and showed a balance of $4,428 to be financed. The trailer was then delivered to her.

Plaintiff did not know the Hobbs and had never met them, but she was told that she was taking over their contract. Subsequent to the delivery of the trailer, and on the 23rd of August 1958, plaintiff and her former husband acknowledged the execution and delivery of an assumption agreement, dated August 15, 1958, and signed by them. It was also signed by the Hobbs, by

Burnett, their attorney-in-fact, Burnett's Home Trailer Sales, and the bank. The testimony is not too clear, but would seem to indicate that at the time of the execution of this assumption agreement, plaintiff was present with her then attorney.

The assumption agreement described the house trailer; stated the purchase was made by conditional sales contract; and that the contract and all rights and interest therein were owned by the bank and that there was due thereon $4,242.35 (rather than $4,428 as specified in plaintiff's agreement to purchase), payable by 54 payments of $77.13 and a final installment for the balance, with the first payment due on September 20, 1958. It provided that the original purchasers sold and transferred their rights and interest in the trailer and the conditional sales contract to the plaintiff as a new purchaser. The bank agreed to the assignment and to the release of the Hobbs, the original purchasers.

Plaintiff made the September and the October payments. No payment was made in November, and this action was filed by her on December 1, 1958. The trailer was repossessed by an agent of the bank on January 14, 1959, and plaintiff had not seen it since January 15, 1959, at which time it was on the Drive-In Realty Company trailer lot. The trailer was subsequently sold by the defendants to another purchaser. The trial court found the contract to be usurious and that the trailer was converted by the bank through its agent on January 14, 1959, and that its value on that date was $3,800.

The bank filed a special appearance herein and attempted to preserve its special appearance throughout. The defendants allege several assignments of error, including the question of venue, the validity of the transaction as a valid time sale, and the question of the right of the plaintiff to allege the defense of usury. For the purpose of this opinion, we assume the illegality of the conditional sales contract and will discuss only this

last point. The defendant bank's assignments of error on this point are as follows: "4. The trial court erred in finding and concluding that plaintiff had acquired more than the original purchasers' equity of redemption to the house trailer in question.

"5. The trial court erred in finding and concluding that the plaintiff was in legal privity with the original purchasers of the house trailer in question, and thereby had available to her the assertion that the transaction between the seller and the original purchasers was usurious."

The defendants insist that the defense of usury is personal to a borrower and is available only to the borrower himself and to those in legal privity with him. This is the general rule. See 91 C. J. S., Usury, § 125, p. 713. Plaintiff concedes this is a correct statement of the law, but that it has no application to the facts in this case. It is her contention that her right exists by contract and not by operation of law. She concedes that she is not standing in privity to the Hobbs as privity is defined, because her status arises by contract.

There are several Nebraska cases on the point urged by the defendants. One of the earliest is that of Cheney v. Dunlap, 27 Neb. 401, 43 N. W. 178, 5 L. R. A. 465, which involved five promissory notes secured by a real estate mortgage. The notes were sold without recourse; the holder died; and the original payee, his executor, brought an action to foreclose the mortgage because of the nonpayment of the notes. The then owner of the land and his predecessor in interest, who was a purchaser from the original mortgagor, pleaded the usurious nature of the original transaction. We said: "The plea of usury as a defense is personal to the borrower and his sureties and privies." We also held: "A mere purchaser of the equity of redemption, being neither surety nor privy, cannot avail himself of the usurious contract of his grantor to which he is a stranger and plead usury in such contract."

The case of Building & Loan Assn. of Dakota v. Walker, 59 Neb. 456, 81 N. W. 308, is a little more analogous to the instant situation. It involved the foreclosure of a real estate mortgage given by one Fugate to the plaintiff to secure a promissory note. The defendants Walker purchased the mortgaged premises and assumed and agreed to pay the indebtedness secured by the mortgage. The Walkers, to defeat the foreclosure of the mortgage, pleaded the usurious nature of the transaction between the plaintiff and Fugate, their grantor. We said: "The defense of usury was not available to the defendants, since they were not parties to the loan, but merely purchased the mortgaged premises and assumed and agreed to pay the debt, which fact did not permit them to assail the contract on the ground that it was tainted with the vice of usury. See Cheney v. Dunlap, 27 Nebr., 401; Morling v. Bronson, 37 Nebr., 608; McKnight v. Phelps, 27 Nebr., 858."

In the later case to foreclose a mortgage, which involved a junior mortgage taken subject to the mortgage in question, we held: "The defense of usury is personal to the debtor, and may not be successfully pleaded by the holder of a junior mortgage expressly taken subject to the mortgage to which the defense is sought to be applied." First State Bank v. Niklasson, 116 Neb. 713, 218 N. W. 744.

The most recent case touching on who is privy to a party to a usurious transaction is Commonwealth Trailer Sales, Inc. v. Bradt, 166 Neb. 1, 87 N. W. 2d 705, 70 A. L. R. 2d 1397. This case does not involve the purchaser of an equity of redemption but rather attaching creditors. Like the instant case, it involved a house trailer, except that a chattel mortgage rather than a conditional sales contract was involved. The attaching creditors had secured judgments against the mortgagor. For the purpose of a decision in that case, we assumed the violation of the restrictive provisions of the Installment Loan Act in the giving of the chattel mortgage. We said:

"The general rule is that the defense of usury is for the benefit of the borrower and is personal to him. See, 91 C. J. S., Usury, § 71, p. 648; 55 Am. Jur., Usury, § 121, p. 409.

"As stated in 91 C. J. S., Usury, § 71, p. 648: 'Since usury laws are enacted for the protection of needy borrowers, and not to punish extortion in money lenders, the defense of usury is purely personal to the borrower, or those in privity with him, as discussed infra § 126, such as the debtor's sureties, guarantors, heirs, devisees, and personal representatives. *This is true whether the statutes declare the contract void in whole or only to the extent of the usury,* or whether a penalty is given for the taking. In order to question the validity of a usurious contract, the right must be based on the original debtor's right.' " (Italics supplied.)

In that case we also said: "We have often held that a purchaser of the equity of redemption cannot avail himself of the usurius (sic) contract of his grantor. See, Cheney v. Dunlap, supra; Male v. Wink, 61 Neb. 748, 86 N. W. 472; Bolen v. Wright, 89 Neb. 116, 131 N. W. 185. As stated in Bolen v. Wright, supra: 'In support of this claim defendants have cited a number of cases, commencing with Cheney v. Dunlap, 27 Neb. 401, and ending with People's Building, Loan & Savings Ass'n v. Pickard, 2 Neb. (Unof.) 144. From an examination of those cases, it appears that the controlling point in each of them was that the person seeking to interpose the plea of usury was a stranger to the usurious contract, and it was held: "A mere purchaser of the equity of redemption, being neither surety nor privy, cannot avail himself of the usurious contract of his grantor to which he is a stranger and plead usury in such contract." Cheney v. Dunlap, supra.' The same is true of our holding in a case wherein a subsequent lienholder to a mortgage loan that was usurious sought to raise this issue. See First State Bank v. Niklasson, 116 Neb. 713, 218 N. W. 744. As therein stated: 'The further conten-

tion of defendant that the note and mortgage of St. Edward bank was usurious cannot be sustained, for the reason that the defense of usury is personal to the debtor, his privies and sureties.' In view of these, and other holdings of this court, we do not think the sheriff is in a position to raise the defense of usury. See, also, Fenby v. Hunt, 53 Wash, 127, 101 P. 492; Halsey v. Winant, 258 N. Y. 512, 180 N. E. 253. We think, as stated in 55 Am. Jur., Usury, § 122, p. 410, that: 'The rule embraces the heirs, legal representatives, and devisees of the borrower or debtor and those who stand in the relation of sureties, guarantors, or accommodation indorsers, with respect to the tainted obligation.' "

Plaintiff does not dispute the correctness of the principle of law enunciated in the cases cited above. She does assert, however, that they are not applicable because she is not a mere purchaser of an equity of redemption, but that by contract she has been substituted for the original conditional sales purchaser. It is her position that she paid $200 cash for the interest of the Hobbs in addition to assuming the balance due on the contract, and that this action is merely to enforce the right she obtained by contract. It is true the agreement recites that the Hobbs sold, assigned, and transferred all their right, title, and interest in the trailer and in the contract to the plaintiff.

The provisions covering the agreement of the plaintiff are as follows: "Undersigned new purchaser, in consideration of such assignment and of the agreements of the parties, assumes and agrees to pay the above sum in the manner provided in such contract and to perform all other agreements, covenants, obligations and conditions thereof and of the promissory note executed in connection therewith, and, if so requested by the Bank, to execute a new promissory note as evidence, but not as payment, of the obligation hereunder assumed.

"Undersigned new purchaser acknowledges receipt of a true and complete copy of the original conditional sale

contract, all of the terms, conditions, statements and provisions of which (except as herein expressly modified) are incorporated herein by reference with the same force and effect in all respects as if the same were here again set forth in full and in the same form, that he has read and knows the contents thereof, and agrees to be bound thereby to the same extent as if he had been the original purchaser and had properly executed the original instruments.

"Undersigned new purchaser acknowledges that the Title to said trailer has been transferred to him and that he has made proper application for title (or the equivalent thereof recognized by the state in which this agreement is made) in his own name. He further acknowledges that the trailer is in his possession."

It is to be noted that the original contract was subject to express modification in the assumption agreement, and that only those terms, conditions, statements, and provisions of the conditional sales contract which were not modified were incorporated into the assumption agreement. The terms of the conditional sales contract gave the statement of the transaction described heretofore and then provided for 60 equal installments of $77.13. Although plaintiff's application to purchase provided for a balance of $4,428 to be financed, the assumption agreement provides for the payment of $4,242.35, in 54 installments of $77.13, and a final installment of the remaining balance, with the next payment due and payable September 20, 1958. The $4,242.35 is the "above sum" referred to in the portion of the agreement set out above. It would seem that this would be a modification of that portion of the conditional sales contract. There is nothing in any of the other provisions set out which could be construed to assign any rights the Hobbs might have had based on the assertion of the illegality of the contract.

Plaintiff insists that she paid valuable consideration for the assignment of the cause of action for usury.

What did the plaintiff receive for her $200 if she did not receive an assignment of the cause of action? The Hobbs had paid $1,107.50 cash and made five payments of $77.13 each. In addition to any equity in this $1,493.15, she received the trailer and the right to pay out the contract for a small down payment, rather than financing the balance of $4,428 in her application to purchase.

Assuming, however, that the assumption agreement constitutes an assignment of any cause of action the Hobbs might have had for usury, plaintiff cites no authority to support the assignability of such a cause of action. There clearly is none in this jurisdiction. Our problem then is whether or not a cause of action for usury is assignable to a stranger to the transaction who is not a surety or in privity with the borrower. The decisions of other jurisdictions are not harmonious and are affected by statutes, the bases of the rights of action of original borrowers, and public policy of different states, so they are of little help to us. An examination, however, of the few cases we have found in other jurisdictions sustaining such assignability indicates that except for partnership cases, they cover situations already excluded in this jurisdiction, such as the assumption and agreement to pay a mortgage. We have found no cases involving an assumption agreement of a conditional sales contract, nor have any been called to our attention. We do not perceive any actual distinction between the assumption of the payment of the balance due on a usurious conditional sales contract, and the assumption and agreement to pay a real estate mortgage securing a usurious transaction, which is the situation involved in Building & Loan Assn. of Dakota v. Walker, 59 Neb. 456, 81 N. W. 308. The distinction, if any exists, is more fanciful than real.

If, as suggested by our cases, the purpose of the usury acts is to protect the necessitous borrower or his privies in blood or estate and not to punish the lender, how may we justify the assignability of a cause of ac-

tion for usury to a stranger or one merely seeking a windfall? The answer is apparent in this case. Here, the plaintiff, for an investment of $355, lived in a trailer house for more than 5 months, and then secured a judgment for $5,112.36. This will in no way benefit the original borrower, or in any way protect those intended to be protected by the law. We see no reason to depart from the law established by the import of our previous decisions, and hold that a cause of action on a usurious contract is not assignable to a stranger to the transaction.

For the reasons given, we reverse the judgment of the trial court and dismiss the action at the cost of the plaintiff.

REVERSED AND DISMISSED.

SIMMONS, C. J., not participating.

MESSMORE, J., dissenting.