GENERAL ELECTRIC CREDIT CORPORATION, APPELLEE, V. BEST
REFRIGERATED EXPRESS, INC., APPELLANT.

385 N.W.2d 81

Filed April 11, 1986.   No. 84-894.

Robert J. Murray and David D. Begley of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Terrence L. Michael of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

WHITE, J.

This appeal originated as a replevin action brought by appellee, General Electric Credit Corporation (GECC), against appellant, Best Refrigerated Express, Inc. (Best). GECC sought, in the alternative, the return of three Kenworth tractors or a money judgment equal to the value of the tractors. Best counterclaimed, contending that GECC's loan terms violated the Nebraska Installment Loan Act (Act) (Neb. Rev. Stat. §§ 45-114 et seq. (Reissue 1984)), were usurious, and, therefore, were void. Best also sought to recover all interest paid to GECC in violation of the Act.

The Douglas County District Court made a general finding of fact in favor of GECC. Rejecting Best's counterclaim, the court ordered an alternative judgment of $43,798.16 in favor of GECC or the return of the three tractors. Best appeals.

On February 1, 1978, John H. Schueman, doing business as Schueman Leasing, purchased two 1978 Kenworth K-100

tractors with $41,875 per truck loaned to him by GECC. Schueman's debt was evidenced in two promissory notes, each providing for payments of $910.45 per month for 60 consecutive months. The initial interest rate on the notes was 11 percent per annum. The notes also provided that during the life of the loan, the interest would float, based upon

the sum of (a) three per cent ( 3.0 %) per annum (the "Fixed Rate") Plus (b) an interest rate per annum defined as the greater of (i) the highest rate of interest charged by Morgan Guaranty Trust Company of New York, The Chase Manhattan Bank (National Association) - New York, First National City Bank - New York, Chemical Bank - New York for commercial loans of short term maturities to its largest and most creditworthy borrowers (the "Prime Rate") in effect as of the first business day of the month in which an instalment of principal and interest or interest only is due hereunder or (ii) the latest monthly average rate for prime commercial paper of 4 to 6 months maturities, as indicated in the Money Market Rates table of the Federal Reserve Bulletin (the "Prime Commercial Paper Rate") as last published as of the first business day of the month in which an instalment of principal and interest or interest only is due.

The debt was secured by chattel mortgages on the tractors.

Approximately 4 weeks later, Schueman bought another Kenworth K-100 tractor with an additional $41,875 borrowed from GECC. This debt was also secured by a chattel mortgage on the equipment.

Schueman made monthly payments to GECC up to and including those due in January 1981. On February 3, 1981, Schueman assigned all right, title, and interest in the tractors to Best, with Best assuming, in full, Schueman's obligations to GECC. During the time that Best was acquiring Schueman's interest in the tractors, the interest rate on the notes peaked at 24.5 percent. As of April 1983, the interest rate had dropped to 13.5 percent. After April 1983, Best refused to make further payments to GECC, and GECC subsequently filed its replevin action.

Best bases its defense of usury and its counterclaim for

interest on an allegedly usurious and, therefore, illegal loan agreement between GECC and Schueman. Best urges us to hold the agreement similarly void as between Best and GECC.

Best relies on § 45-138 (Reissue 1974) of the Act as it existed in 1978 to support its counterclaim for $71,508.86 in overpaid interest. Best claims that Neb. Rev. Stat. § 49-301 (Reissue 1984), the so-called saving statute, applies, making the 1978 version of the Act control the outcome of the case.

GECC argues that the Act does not control loans of this nature, and even if it did and the loans were illegal, Best has no standing as an assignee to assert any remedies which may have existed under the 1978 version of the Act.

We believe that *Rader v. Burnett*, 175 Neb. 663, 122 N.W.2d 747 (1963), controls this case and is determinative of Best's rights as an assignee of the original debtor. In *Rader* the plaintiff Rader contended that a conditional sales contract on a mobile home of which she was the assignee was void as usurious under the Act. Like Best, Rader was the assignee of all interest in the mobile home, and she assumed all liability of her assignor.

Assuming for purposes of discussion that the loan was void under the Act, the *Rader* court held that Rader nevertheless lacked standing to raise any action under the Act because she lacked the necessary privity with the original debtor.

The court defined the issue: "Our problem then is whether or not a cause of action for usury is assignable to a stranger to the transaction who is not a surety or in privity with the borrower." *Id.* at 672, 122 N.W.2d at 752-53. The court had determined that no privity existed between Rader and her assignor, in part because of the nature and purpose of usury statutes. Stating that " ' "usury laws are enacted for the protection of needy borrowers, and not to punish extortion in money lenders," ' " and " 'the defense of usury is for the benefit of the borrower and is personal to him,' " *id.* at 669, 122 N.W.2d at 751, the court concluded that mere assignees who are strangers to contracts are not in privity with assignors for the purpose of asserting the assignors' usury defense or claims under the Act. Those parties in privity with debtors were limited in *Rader* to the debtor's "sureties, guarantors, heirs, devisees, and personal

representatives." *Id.*

Rader also argued that her rights as an assignee were defined in the contract with her assignor, the terms of which circumscribed any requirement of privity. The court rejected this argument, again on the basis of the purpose of usury statutes:

> If, as suggested by our cases, the purpose of the usury acts is to protect the necessitous borrower or his privies in blood or estate and not to punish the lender, how may we justify the assignability of a cause of action for usury to a stranger or one merely seeking a windfall? The answer is apparent in this case. Here, the plaintiff, for an investment of $355, lived in a trailer house for more than 5 months, and then secured a judgment for $5,112.36. This will in no way benefit the original borrower, or in any way protect those intended to be protected by the law. We see no reason to depart from the law established by the import of our previous decisions, and hold that a cause of action on a usurious contract is not assignable to a stranger to the transaction.

*Id.* at 672-73, 122 N.W.2d at 753. See, also, *Industrial Credit Company v. Berg*, 388 F.2d 835 (8th Cir. 1968); *Commonwealth Trailer Sales, Inc. v. Bradt*, 166 Neb. 1, 87 N.W.2d 705 (1958).

The rule set forth in *Rader* applies in this case. In both, a stranger to the contract seeks to enforce provisions of the Act. Neither party is the heir, legal representative, devisee, surety, or guarantor of the debtor's obligation. No privity exists between the debtors and their assignees, who seek refuge from contractual obligations in their assignor's personal rights. Like Rader, Best has no standing to assert such rights.

Accordingly, we do not reach the appellant's remaining issues. The district court's decision is correct and is affirmed.

AFFIRMED.

CAPORALE, J., not participating.

KRIVOSHA, C.J., concurring.

I concur in the result reached by the majority in this case. Because, however, I have some question as to whether our decision in *Rader v. Burnett*, 175 Neb. 663, 122 N.W.2d 747 (1963), relied upon totally by the majority, correctly states the

law with regard to suits brought by a lender under Neb. Rev. Stat. § 45-138 (Reissue 1984), I cannot join with the majority in its opinion. While it may be true that, generally, usury is a personal defense and therefore cannot be assigned, the issue in this case is complicated by the language of the statute. Section 45-138 provides that if a contract is made in violation of § 45-138, the lender *shall* have no right to collect or receive any interest or charges on such loan. That raises totally different questions not addressed by this case, including the question of who has the burden under § 45-138 to establish the lender's right to collect on the contract where the loan on its face is in violation of law. I do not believe that we need to address those issues and can properly leave them for another time. I do so because I believe that our decision in *Farmland Enterprises, Inc. v. Schueman*, 212 Neb. 342, 322 N.W.2d 665 (1982), makes it clear that not only was the counterclaim sought to be raised by Best not available to Best but, in fact, would not have been available even to the assignor, Schueman, and General Electric Credit Corporation (GECC) was entitled under the law to sue on the contract and collect the full amount due.

Best concedes that it can recover only if the court holds that the provisions of § 45-138 (Reissue 1974), as it existed in 1978, are applied. If, in fact, the provisions of § 45-138 as it existed when GECC brought suit apply, then there was no violation of the statute. Our holding in *Farmland Enterprises, Inc., supra,* makes it clear that the law as it existed at the time GECC filed its cause of action and not when the contract was executed is the applicable statute, and therefore a defense contained in a statute previously repealed is not available to Best.

In *Farmland Enterprises, Inc., supra* at 348, 322 N.W.2d at 668, we stated:

> " 'Upon the theory that the privilege of pleading usury as a defense pertains only to the remedy and is not an element in the rights inhering in the contract, many courts have held that the legislature by the amendment or repeal of the usury statutes abridge or take away the right to assert usury as a defense as to contracts previously entered into. It is generally considered that parties to usurious contracts hold any right they may have to penalties given by law,

subject to a modification or repeal by the legislature, and that the repeal of a statutory prohibition against usury releases any penalties imposed, and thus validates the contract.'

". . . 'A mere penalty never vests, but remains executory; the repeal of a statute before a penalty is enforced is not a deprivation of vested rights. The unqualified repeal of a statute imposing a penalty operates the same way as the repeal of a strictly criminal statute. It abrogates all rights of action which have not been reduced to judgments. . . .' "

We then concluded in *Farmland Enterprises, Inc., supra* at 348-49, 322 N.W.2d at 669, by saying: "We believe that the enactment of § 45-101.04 some 4 years prior to the bringing of a suit in this case exempted this transaction from the provisions of § 45-105 and the limitations imposed by § 45-101.03."

The same theory applies to the provisions of § 45-138 and its amendments. In April of 1983, when GECC filed suit, neither Schueman nor Best had any defense based upon the previous provisions of § 45-138.