McCurdy, J.
The restricting of the price to be paid for the use of money is everywhere a statutory regulation. In the absence of unfairness or oppression there is no more inherent wrong in receiving ten dollars for the loan of one hundred dollars for a year than in taking the same sum for the use of any other article.
By the law of 1850, the lender and borrower in certain cases were allowed, in addition to the regular rate of interest, to agree upon a bonus» to be paid for the money loaned. According to an understanding of this statute which prevailed throughout the state, it was generally arranged that this bonus should take the form of a monthly per centage, instead of a gross sum in advance. That construction was held in the case of Mutual Savings Bank &c. v. Wilcox, (24 Conn., 147,) to be erroneous; whereupon the law of 1856 was enacted. It is admitted that this statute applies directly, in its meaning and its terms, to the case before the court, and the only defense is that the law itself is void. There is nothing in the contract in question which this court can say is unfair or unjust. The difficulty in enforcing its execution *which was created by the [ *102 J doubtful phraseology of one statute, was removed by the positive provisions of the other, and the parties were thus left to their original agreement, unembarrassed by the mistakes of form.
It is not easy to see how the objection of the respondents can be sustained, except by taking the broad ground that a retroactive law is of course and under all circumstances to be treated as a nullity—a position which we can not believe any court in this country at the present time would be likely to assume ; for healing enactments are found absolutely necessary, continually, and under all governments, to remedy the evils arising from human imperfections. *84 This subject was thoroughly investigated in the case of Goshen v. Stonington, 4 Conn., 209, and the questions now raised were elaborately discussed and were supposed to be settled. The retroactive law objected to in that case was far more extensive in its effects than the statute of 1856. It made husbands and wives of persons who, except for its provisions, were single. It made children legitimate who were otherwise bastards. It altered settlements, and conferred new rights, and imposed new duties and restrictions upon towns and individuals. It changed lines of descent and deranged rules of property. The principle adopted was, in substance, that when a statute is expressly retroactive, and the object and effect of it is to correct an innocent mistake, remedy a mischief, execute the intention of parties, and promote justice, then, both as a matter of right and of public policy affecting the peace and welfare of the community, the law should be sustained.
That decision has been followed in this state in the cases of Bridgeport v. Hubbell, (5 Conn., 237,) Mather v. Chapman, (6 id., 55,) Beach v. Walker, (id., 190,) Morton v. Pettibone, (7 id., 319,) Booth v. Booth, (id., 350,) and Savings Bank v. Bates, (8 id., 505.) The last case is nearly identical with the present.
The case of Goshen v. Stonington has become a leading one throughout the country, and its reasonings and results have been generally approved, although it must be admit- [ *103 ] ed there *are numerous dicta and some decisions which seem to militate against 'them. We deem it unnecessary to review the cases elsewhere, as the decisions in this state are so numerous, uniform, manifestly just, and entirely satisfactory.
WTe advise judgment for the plaintiffs for the full amount of their claim.
In this opinion the other judges concurred.
Judgment for plaintiffs for full amount.