NORMA A. MATTHEWS, APPELLANT, V. FRIEDRICH GUENTHER ET AL., APPELLEES.*

FILED FEBRUARY 27, 1931. NO. 27000.

*Note—See former opinion of affirmance, p. 849, *post.*

*Courtright, Sidner, Lee & Gunderson,* for appellant.

*J. F. Green* and *M. F. Harrington, contra.*

Heard before Goss, C. J., Rose, Dean, Good, Eberly and Day, JJ.

Eberly, J.

Opinion on motion for rehearing and on the merits of an action to foreclose a second real estate mortgage of date May 28, 1925, executed and delivered by the defendants to plaintiff and plaintiff's assignee to secure payment of the sum of $18,250, evidenced by a promissory note of even date, due June 1, 1935, "with interest at the rate of ten per cent. per annum, payable annually, from date until paid." This action was commenced in the district court for Cedar county on the 28th day of August, 1928, and is based upon an alleged accelerated maturity caused by non-payment by the defendants of interest on the indebtedness accruing and due on June 1, 1927, and June 1, 1928, and also because of the failure of the defendants to "pay all taxes and assessments levied upon said real estate" covered by the mortgage in suit "before the same became delinquent." As to the condition of this mortgage, plaintiff in her petition alleges: "Said mortgage deed was by the terms thereof conditioned as follows: 'Subject to a mortgage of $17,000 to the Omaha Trust Company, of Omaha, Nebraska. The intention being to convey hereby an absolute title in fee simple including all the rights of homestead and dower. To have and to hold the premises above described, with all the appurtenances thereunto belonging unto the said D. A. and N. A. Matthews and to their heirs and assigns, forever; provided always, and these presents are upon the express condition that if the said Friedrich Guenther, his heirs, executors, administrators or assigns shall pay or cause to be paid to the said D. A. and N. A. Matthews, their heirs, executors, administrators or assigns, the sum of $18,250, payable as follows, to wit, $18,250 on or before the 1st day of June, 1935, with interest thereon at ten per cent. per annum, payable annually, according

to the tenor and effect of the one promissory note * * * of said Friedrich Guenther and Katie Guenther, bearing even date with these presents, and shall pay all taxes, and assessments levied upon said real estate, and all other taxes, levies and assessments levied upon this mortgage or the note which this mortgage is given to secure, before the same becomes delinquent, * * * then these presents to be void, otherwise to be and remain in full force.'

" 'It is further agreed: (1) That if the said mortgagor shall fail to pay such taxes * * * the said mortgagee may pay such taxes; * * * and the sum so advanced, with interest at — per cent. shall be paid by said mortgagor, and this mortgage shall stand as security for the same; (2) that a failure to pay any of said money, either principal or interest, when the same becomes due, or a failure to comply with any of the foregoing agreements, shall cause the whole sum of money herein secured to become due and collectible at once at the option of the mortgagee.' "

The defendants in their amended 'answer and cross-petition, filed January 3, 1929, set up and rely upon usury as their sole defense. They expressly admit the existence of an unpaid first or prior mortgage of $17,000; the execution and delivery of plaintiff's mortgage as alleged; in apt terms charge that the concurring agreements to pay the 10 per cent. by the terms of the note and mortgage, and in addition thereto to pay the taxes levied against the real estate involved, or such as might be levied against the mortgage and note in suit, constitute usury; that the defendants had paid interest at 10 per cent. on the $18,250 from date to June 1, 1926, in the sum of $1,700 ($1,825), and all taxes levied and assessed against said premises for 1926 and prior thereto; that on the 8th day of September, 1928, the defendants paid the taxes levied against the premises for 1927, and allege they are entitled to have the $1,700 ($1,825) thus paid credited upon the principal note, and deny the right of plaintiff to a foreclosure until the maturity of such note on June 1, 1935.

To this answer and cross-petition a reply was filed, which, in substance, may be considered a general denial.

On the trial the record discloses that there was no substantial dispute as to the facts in the case set forth in the petition of each of the parties hereto, and by stipulation a tax receipt for the payment of taxes on the west half of section 19, township 32, range 1, the premises in litigation, assessed for 1927, paid by the defendant Friedrich Guenther, was received in evidence. It disclosed that for that year the premises were valued for taxation at $23,655; taxes were assessed to the defendant Guenther thereon in the sum of $596.11, which with interest accrued at the time of payment in the sum of $17.94 made the total amount paid by that defendant, September 9, 1928, $614.05.

Upon conclusion of the evidence, and after consideration of the briefs and arguments of counsel, the trial court found generally for the defendants and dismissed plaintiff's petition and action. Plaintiff appeals.

. In the absence of the defense of usury, our previous decisions are decisive of the rights of the litigants herein. Thus, under provisions of mortgages, substantially identical with the language of the instrument in suit, we have sustained foreclosures based on accelerated maturity occasioned by the nonpayment of interest. *Lowenstein v. Phelan,* 17 Neb. 429; *McCarthy v. Benedict,* 89 Neb. 293; *Moorehead v. Hungerford,* 110 Neb. 315; *Northwestern Mutual Life Ins. Co. v. Butler,* 57 Neb. 198; *National Life Ins. Co. v. Butler,* 61 Neb. 449. And as to the effect of default by the mortgagor under tax covenants identical with those here presented, we are likewise committed to the view that—"A stipulation in a mortgage authorizing the mortgagee to accelerate the maturity of the mortgage debt, if the taxes on the mortgaged premises are not paid at or before the time they become delinquent, is not forbidden by statute, nor contrary to public policy, and may be enforced." Further: "And the payment of such delinquent taxes after the commencement of an action to foreclose the mortgage does not deprive the mortgagee of the right secured by the exercise of his option." *Hockett v. Burns,* 90 Neb. 1. See *Crawford v. Houser,* 115 Neb. 62.

It may, therefore, be said with assurance that, in the absence of the defense of usury, the plaintiff here would be entitled to the benefit of an accelerated maturity on either of two grounds, viz., nonpayment of interest when due, and also nonpayment of taxes. However, the defense of usury is before us, and was sustained by the trial court, and all relief denied to plaintiff. It seems quite evident that in determining the transaction before it to be usurious the district court herein followed the views expressed by this court. It seems equally true that in denying plaintiff all relief and dismissing the action the trial court has fallen into error. In view of the facts hereinbefore set forth, it is the settled doctrine of this court that—"A mortgage which, by its express terms, requires the mortgagor to pay the maximum legal rate of interest on the debt which it secures, and, in addition, to pay the taxes upon the mortgagee's interest in the mortgaged premises, is usurious." *Stuart v. Durland*, 115 Neb. 211. See *Quesner v. Novotny*, 116 Neb. 84; *Dwyer v. Weyant*, 116 Neb. 485; *War Finance Corporation v. Thornton*, 118 Neb. 797. But this doctrine in no manner denies all relief in equity to a mortgagee whose mortgage is tainted with usury. Our statute expressly provides: "If a greater rate of interest than is hereinbefore allowed shall be contracted for or received or reserved, the contract shall not, therefore, be void, but if in any action on such contract, proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid." Comp. St. 1929, sec. 45-105.

In *Gibson v. Sherman County*, 97 Neb. 79, this court, speaking through Sedgwick, J., has approved the doctrine as to usury announced by the supreme court of the United States in *Ewell v. Daggs*, 108 U. S. 143, in effect holding, "the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation," and its penalties

will be limited, supported and continued only when, and to the extent, the express terms thereof provide. Neither are the equities of the parties here in any manner affected by the fact that the taxes and assessments for 1927, properly assessable on the interest of each of the parties to this litigation, were combined by the county clerk in one assessment against the real estate. This was in accordance with the plain statutory provision. Comp. St. 1929, sec. 77-1503. Nor did the defendants suffer the slightest prejudice thereby. The tax laws of our state preserve for each ample opportunity to pay and discharge the taxes justly assessable against their respective interests. Indeed, the sum of the interest of each in the land constituted the taxable value of the land itself. *Bowen v. Holt County,* 101 Neb. 642. Their respective interests, therefore, were nothing more than undivided shares in the property assessed, made so by the express provisions of the statute. "The tax may be paid on an undivided share of real estate. In such case the treasurer shall designate on his record upon whose undivided share the tax has been paid." Comp. St. 1929, sec. 77-1903. It is admitted that the defendants wholly failed to take advantage of the express provisions above quoted, but made default in the terms of their covenant.

Under our statutes the facts in the instant case, therefore, do not invoke the application of the maxims that, he who comes into a court of equity must come with clean hands, or that, he who seeks equity must do equity. The controlling maxim here applicable is, equity follows the law. The statutes heretofore quoted expressly provide for controversies involving usury, and enjoin judicial action by the court with express directions as to what shall be done. These terms are controlling in a court of equity as well as in a court of law. Indeed, in *Stuart v. Durland, supra,* and cases following the rule announced therein, the right of foreclosure to the extent limited by the statute quoted was expressly recognized, approved and directed. In *Dawson County State Bank v. Temple,* 116 Neb. 727, Good, J., in delivering the opinion of this court, in a case involving

similar facts to those reflected in the present record, says, in part: "The defense of usury is sustained by the record. It appears that the mortgagee has paid taxes upon the mortgaged premises, a part of which would represent taxes upon the mortgagee's interest and a part on the mortgagors' interest in the real estate, but there is nothing apparent in the record from which it can be determined what portion of the tax paid was upon the respective interests of the mortgagors and the mortgagee in the real estate. * * * The judgment of the district court is reversed, and the cause remanded, with directions to allow plaintiff a decree of foreclosure for the principal of its mortgages without interest; also to allow plaintiff a recovery for that part of the tax which was paid upon the mortgagors' interest in the real estate and to adduce additional evidence to establish the amount thereof. *On this latter amount plaintiff is entitled to recover interest.*"

The implication which the above language sustains, as relates to the facts in the instant case, is obvious, but a stronger reason is to be found in the express provisions of the statute. Our tax laws provide: "All property in this state, not expressly exempt therefrom, shall be subject to taxation, and shall be valued and assessed at its actual value." Comp. St. 1929, sec. 77-201. "Taxes on all real property shall be a first lien thereon from and including the first day of December of the year in which they are levied until the same are paid." Comp. St. 1929, sec. 77-203. See *Taylor v. Harvey,* 90 Neb. 562; *Mutual Benefit Life Ins. Co. v. Siefken,* 1 Neb. (Unof.) 860; *Merriam v. Goodlett,* 36 Neb. 384.

Sections 77-1501 to 77-1505, Comp. St. 1929, contain special provisions relating to the assessment of real estate mortgages, and provide that in the absence of an agreement the interests of mortgagors and mortgagees shall be separately assessed. Even so, it is also therein provided: "In case of nonpayment of any tax levied upon the interest of the owner or mortgagee or assigns, the land upon which the tax is unpaid shall be sold at the time and in the manner provided by law for the sale of real

estate for delinquent taxes." Comp. St. 1929, sec. 77-1502. It is thus quite apparent that, whether assessed on the interest of the mortgagor or of the mortgagee, taxes must be deemed assessed upon the land. In construing these statutes, Hamer, J., in *Bowen v. Holt County*, 101 Neb. 642, employed the following language: "We think the manifest purpose of sections 6350, 6351 (Rev. St. 1913), above quoted, is to secure the assessment and taxation of the mortgagor's and mortgagee's interests separately. Each interest is an interest in the land. The sum of these interests is the value of the land itself. If the amount of the mortgage exceeds the value of the land, yet the value of the mortgage or any 'interest in real estate' cannot exceed the value of the real estate in which it is an interest, and ought not to be assessed at more than the value of the real estate. * * * It is manifest that the total assessed value of any real estate cannot exceed the interest of mortgagor and mortgagee."

We concede for the purpose of this opinion, but do not decide, that the defendants are entitled to have the interest paid by them ($1,825) credited on their principal note as of date of payment, and that no interest may be collected thereon. However, there is no contention that any attempt ever was, or will be, made to tax plaintiff's note and mortgage except as under our statute it became an interest in the real estate. Therefore, this leaves for our consideration the words of the tax covenant, a part of plaintiff's mortgage, to the effect that the mortgagors "shall pay all taxes and assessments levied upon said real estate * * * before the same become delinquent." It may be remembered that originally the object and purpose of the tax clause in a real estate mortgage was for the protection and preservation of the mortgage security. Such indeed still remains its mission. As a contract provision its true intent and scope must be determined from the language employed, the provisions of the statutes involved, the subject-matter, the object to be accomplished thereby, and the situation of the parties. So construed, "all taxes and assessments" can be given no other meaning

save and except that these terms shall include all taxes and assessments against the real estate without reference to the interests of the parties therein. Indeed, in the light of this evident object and purpose, this clause could be given no other construction in view of the provisions of the statute whereby, whether taxes be assessed against the mortgagor or the mortgagee, they are ultimately to be enforced against the real estate as a first lien. Then, too, this inference is strengthened by the allegations of the answer and cross-petition, and also the proof of taxes paid on part of the defendants. It follows, therefore, that the taxes of 1927 which the defendants allege were "all taxes levied against said real estate," and which they expressly stipulate they paid, must be deemed and taken as all taxes and assessments levied against all interests in said real estate, including all mortgagors and all mortgagees. If this be conceded, the defendants have wholly failed to establish a substantial performance of the terms of the covenant. Under its terms they were required to pay the taxes of 1927 before they became delinquent. They failed to do so, and thereupon an action for foreclosure was begun while the taxes were still delinquent and unpaid. Their sole defense now is usury, but usury, as we have already seen, only invalidates so much of the transaction as constitutes usury. In the language of the statute, "the contract shall not, therefore, be void." The evidence shows that the real estate in controversy was valued for taxation in 1927 at $23,655. Under the authority of *Bowen v. Holt County, supra,* to ascertain the value of plaintiff's mortgage we deduct the first mortgage of $17,000, which leaves the sum of $6,655. This was necessarily the extent of the assessed valuation of plaintiff's mortgage, and represents her proportionate part of the taxes assessed on the premises for the year 1927. The total taxes actually paid by the defendants for 1927 on the valuation of $23,655 was $614.05. Of this amount not to exceed $173 was the proportionate part representing the taxes and assessments on plaintiff's note and mortgage. The effect of the usury statute was to invalidate the tax covenant to the extent

of the usury involved, and no more.. This would eliminate but $173 and leave a valid covenant, on the part of the defendants to perform, to pay the sum of $441. This was not done as required by the terms of the covenant. It follows that at the time of the institution of this action none of the taxes for 1927 had been paid, and the covenant to pay taxes had been breached by the defendants to the extent at least of $441, and plaintiff's cause of action had fully accrued. The payment of such delinquent taxes after the commencement of the action to foreclose the mortgage did not deprive the mortgagee of the right secured by the exercise of his option. *Hockett v. Burns,* 90 Neb. 1.

The motion for rehearing is overruled in part, the former judgment of this court is set aside, the judgment of the district court is reversed and the cause remanded, with directions for further proceedings in harmony with this opinion.

REVERSED.