JAMES A. DAVIS ET AL., APPELLANTS, V. GENERAL MOTORS ACCEPTANCE CORPORATION, A CORPORATION, ET AL., APPELLEES.

127 N. W. 2d 907

Filed April 24, 1964. No. 35706.

Richard L. Debacker, for appellants.

Charles S. Reed, Clarence A. Davis, Luebs, Elson, Tracy & Huebner, and Cunningham & Cunningham, for appellees.

Kerrigan, Line & Martin, Nelson, Harding & Acklie, Charles F. Noren, and E. D. Warnsholz, for amici curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

On January 31, 1963, James A. Davis and Joan B. Davis, the plaintiffs, entered into a contract of conditional sale for the purchase of a truck from the defendant, Kinman Chevrolet-Cadillac, Inc. Later the contract was assigned to the defendant, General Motors Acceptance Corporation. This action was brought to declare the contract void and to recover the payments which the plaintiffs have made under the contract.

The petition alleged that the contract for the purchase of the truck conformed to the 1959 Nebraska Installment Sales Act; that it was in fact a loan made in violation of the Nebraska Installment Loan Act; and that it was, therefore, void and unenforceable. A motion to strike certain allegations of the petition relating to the plaintiffs' right to relief filed by General Motors Accept-

ance Corporation was sustained. Thereafter, general demurrers filed by both defendants were sustained and the action dismissed.

The plaintiffs' motion for new trial was overruled and they have appealed. The assignments of error relate to the sustaining of the motion to strike and the general demurrers. Because the action was determined upon the motion to strike and the demurrers of the defendants, there is no issue of fact presented. The allegations of the petition must be accepted as true and the question which is to be determined is whether the plaintiffs have any right to the relief requested.

In Elder v. Doerr, 175 Neb. 483, 122 N. W. 2d 528, this court held that the 1959 Nebraska Installment Sales Act was unconstitutional and that a contract made in conformity with it violated the Nebraska Installment Loan Act and was subject to the penalties prescribed in that act. A subsequent decision reached the same result concerning the 1963 Nebraska Installment Sales Act. Stanton v. Mattson, 175 Neb. 767, 123 N. W. 2d 844.

The Seventy-fourth (Extraordinary) Session of the Legislature, which convened on October 21, 1963, enacted legislation relating to installment sale contracts and installment loans. The defendants contend that three of the statutes passed at that session of the Legislature are applicable to this action and defeat the plaintiffs' right to relief. The defendants rely upon Legislative Bills 16, 17, and 19 enacted by the Special Session of the 1963 Legislature. For convenience, these acts, which appear respectively as Chapters 8, 9, and 6 of the Session Laws, Seventy-fourth (Extraordinary) Session of the Legislature of Nebraska, will be referred to as L. B. 16, L. B. 17, and L. B. 19.

The plaintiffs contend that the statutes referred to are unconstitutional and, therefore, are of no effect so far as this action is concerned. Thus, the issue presented is the

validity and effect of L. B. 16, L. B. 17, and L. B. 19 with respect to this action.

The Installment Loan Act originally provided that a loan made in violation of the act was void and that the licensee had no right to collect or receive any principal, interest, or charges whatsoever. §§ 45-137, 45-138, 45-154, 45-155, R. R. S. 1943. L. B. 17 amends sections 45-137, 45-138, 45-154, and 45-155 of the Installment Loan Act to provide that a loan made in violation of the act shall not on that account be void, but the licensee shall have no right to collect or receive any interest or charges, and any interest or other charges which have been collected shall be forfeited and refunded to the borrower. L. B. 17 further provides that the penalty provisions as amended shall apply to all transactions made prior to the effective date of the act except where an action on such a transaction has been reduced to final judgment. L. B. 17 contained an emergency clause, was approved on November 15, 1963, and became effective on that date.

L. B. 17 is general in nature and applies to all loans which are subject to the Installment Loan Act. The plaintiffs do not contend that the Legislature has no power to change the penalty provisions of the Installment Loan Act, or that the power was defectively exercised, except insofar as L. B. 17 was intended to apply to transactions which occurred before its effective date. The contention that the Legislature cannot make such legislation retroactive is made with respect to all three acts and will be considered later.

L. B. 16 relates to contracts for the sale of property upon an installment basis. The act defines an "agreement" as an agreement for the sale of personal property upon an installment basis including contracts entered into pursuant to the 1959 and 1963 Installment Sales Acts. It further provides that in the event such an agreement is judicially determined to constitute, in whole or in part, a loan with interest, the applicable limit on such interest

shall be that set forth in section 45-101, R. S. Supp., 1961, as amended, and the sole remedy or defense available to such a buyer by reason thereof shall be that prescribed in section 45-105, R. R. S. 1943.

Section 45-101, R. S. Supp., 1961, is a part of the general usury or interest statute and generally prohibits interest in excess of 9 percent per annun on loans to which it is applicable. Section 45-105, R. R. S. 1943, is also a part of the general interest statute and provides generally that the penalty for violation of the act shall be forfeiture of interest.

L. B. 16 also provides that it shall apply exclusively to all agreements made prior to the effective date of the act except where an action on such an agreement has been reduced to final judgment. L. B. 16 contained an emergency clause, was approved on November 15, 1963, and became effective on that date.

L. B. 16 is an attempt to legislate specially in regard to contracts for the sale of personal property upon an installment basis. Reduced to its simplest form, it is an effort to classify installment loans made incident to the sale of personal property separately from all other installment loans. This was held to be an unreasonable and unconstitutional classification in Stanton v. Mattson, *supra*. For the reasons stated in Stanton v. Mattson, *supra,* we conclude that L. B. 16 is special legislation which violates Article III, section 18, of the Constitution of Nebraska, and is therefore invalid.

L. B. 19 provides, in part, as follows: "Notwithstanding the provisions of any other statute, any statute containing mandatory provisions requiring compliance therewith and subjecting those acting within the operative scope thereof to civil or criminal sanctions, penalties, or forfeitures for failure to so comply is judicially determined to be unconstitutional, such judicial determination shall be given prospective effect only and agreements entered into in accordance with such statutes pri-

or to the date of the particular decision holding the applicable statute unconstitutional shall be fully valid and enforceable according to their terms, subject to common law defenses applicable to all contracts."

L. B. 19 also provides that it shall apply to statutes enacted and agreements entered into in accordance therewith prior to its effective date. L. B. 19 contained an emergency clause, was approved on November 22, 1963, and became effective on that date.

It is a settled principle of constitutional law that the construction and interpretation of the Constitution is a judicial function and it is the duty of the judicial branch of our government to determine whether an act of the Legislature contravenes the provisions of the Constitution. Searle v. Yensen, 118 Neb. 835, 226 N. W. 464, 69 A. L. R. 257. This power and duty necessarily include the authority to determine what effect if any an unconstitutional statute shall have upon the rights of parties which may have been affected by it.

L. B. 19 is an attempt by the Legislature to give limited validity to certain of its acts which are later determined to be unconstitutional by providing that the determination of invalidity shall have prospective effect only. L. B. 19 is, therefore, an invasion of the powers and authority of the judiciary and violates the doctrine of separation of powers found in Article II, section 1, of our Constitution. We conclude that L. B. 19 is unconstitutional.

We now consider the power and authority of the Legislature to give retroactive effect to L. B. 17. It is important to a correct understanding of this question to recognize that all of the rights which the plaintiffs claim arise out of the penalty provisions of the Installment Loan Act. The contract which the plaintiffs entered into would have been valid at common law. See, 55 Am. Jur., Usury, § 3, p. 324; 91 C. J. S., Usury, § 5, p. 569. The entire claim to invalidity is based upon the

former provision in the Installment Loan Act that loans made in violation of the act were void and that the licensee had no right to collect or receive any principal, interest, or charges whatsoever. This provision was repealed by L. B. 17 and a provision for forfeiture of interest and charges substituted.

The prohibition in the Constitution of Nebraska against retroactive legislation affecting civil rights or regulating civil remedies is in the Bill of Rights which provides that no person shall be deprived of his property without due process of law, and that no law impairing the obligation of contracts shall be passed. Art. I, secs. 3 and 16, Constitution of Nebraska. Thus, the question is whether the plaintiffs had a vested right in the penalty provisions of the Installment Loan Act as they existed at the time the contract was entered into and whether the repeal of the penalty provisions impaired the obligation of the contract.

The repeal of a statute without any provision for saving the rights founded on the statute determines an action founded upon the statute. In Bennet v. Hargus, 1 Neb. 419, this court said: "By a long course of judicial decisions it has become a settled principle that a right of action, or a remedy founded solely on a statute, or a pending suit to enforce such remedy, not prosecuted to judgment, is terminated by the repeal of such statute, without a provision for saving rights accrued under it, or suits already commenced to enforce them. The reason is apparent. If there be no such remedy at common law, then, after the unconditional repeal of the statute which created it, there is neither common law nor statute to uphold it." See, also, City of Beatrice v. Gage County, 130 Neb. 850, 266 N. W. 777.

In 1873 the Legislature enacted the general saving clause statute. G. S. p. 1056. Section 2 of the act now appears as section 49-301, R. R. S. 1943, and provides that the repeal of a statute shall not affect pending actions

founded thereon, nor causes of action not in suit that occurred prior to the repeal "except as may be provided in such repealing statute." The purpose of the statute is to avoid the effect of the rule stated in Bennet v. Hargus, *supra,* except where the Legislature expressly provides that the repealing act shall apply retroactively. State ex rel. City of Grand Island v. Union Pacific R. R. Co., 152 Neb. 772, 42 N. W. 2d 867.

The general saving clause, section 49-301, R. R. S. 1943, has no application in this case because of the express language in L. B. 17, section 5, that the penalty provisions of the Installment Loan Act as amended by L. B. 17 shall apply to all transactions made prior to its effective date except where an action on such a transaction has been reduced to final judgment. Thus, the Legislature has provided in the repealing statute that the repeal of the penalty provisions of the Installment Loan Act, as they existed prior to L. B. 17, shall affect all transactions except those on which an action has been reduced to final judgment. City of Fremont v. Dodge County, 130 Neb. 856, 266 N. W. 771.

Forfeiture is one of the means provided in the Installment Loan Act to insure compliance with its terms. It is a liability of the lender which results from the violation of the statute. Thus, an action against a lender under the Installment Loan Act is an action to enforce a forfeiture which, in practical effect, is punitive as to him. Abel v. Conover, 170 Neb. 926, 104 N. W. 2d 684. In the Abel case this court discussed the general interest statute, which provides a forfeiture of interest as a penalty for its violation, and noted that the forfeiture prescribed in the Installment Loan Act differs only in degree.

A forfeiture such as is prescribed in the Installment Loan Act is generally considered to be penal in nature. Because usury statutes are generally held to be penal in nature, they are subject to amendment or repeal by ret-

roactive legislation. The rule is stated in 16 C. J. S., Constitutional Law, § 254, p. 1246, as follows: "There is no vested right in the usury laws, which, therefore, may be repealed or changed so as to affect causes of action and defenses even in pending suits."

In 55 Am. Jur., Usury, § 4, p. 326, the rule is stated as follows: "Upon the theory that the privilege of pleading usury as a defense pertains only to the remedy and is not an element in the rights inhering in the contract, many courts have held that the legislature by the amendment or repeal of the usury statutes abridge or take away the right to assert usury as a defense as to contracts previously entered into. It is generally considered that parties to usurious contracts hold any right they may have to penalties given by law, subject to a modification or repeal by the legislature, and that the repeal of a statutory prohibition against usury releases any penalties imposed, and thus validates the contract."

This conforms to the general rule that no one has a vested interest in a statute which is penal in nature. As stated in 23 Am. Jur., Forfeiture and Penalties, § 40, p. 632: "A mere penalty never vests, but remains executory; the repeal of a statute before a penalty is enforced is not a deprivation of vested rights. The unqualified repeal of a statute imposing a penalty operates the same way as the repeal of a strictly criminal statute. It abrogates all rights of action which have not been reduced to judgments. All pending actions and proceedings to recover a penalty which have not been prosecuted to a final judgment are defeated by the repeal. Therefore, the repeal of a statute which imposes a penalty will prevent any prosecution, trial, or judgment for penalties accruing while such statute was in force, unless the contrary is provided in the repealing statute or some other existing statute." See, also, Kleckner v. Turk, 45 Neb. 176, 63 N. W. 469; Globe Publishing Co. v. State

Bank of Nebraska, 41 Neb. 175, 59 N. W. 683, 27 L. R. A. 854.

Perhaps the leading case in the United States on this question is Ewell v. Daggs, 108 U. S. 143, 2 S. Ct. 408, 27 L. Ed. 682. That case involved a Texas statute which provided that contracts in violation of the statute "shall be void and of no effect for the whole premium or rate of interest only." After the contract had been made, the statute was repealed by a constitutional amendment. In holding the repeal of the statute to be retroactive the court said: "The effect of the usury statute of Texas was to enable the party sued to resist a recovery against him of the interest which he had contracted to pay, and it was, in its nature, a penal statute inflicting upon the lender a loss and forfeiture to that extent. Such has been the general, if not uniform, construction placed upon such statutes. And it has been quite as generally decided that the repeal of such laws, without a saving clause, operated retrospectively, so as to cut off the defence for the future, even in actions upon contracts previously made. And such laws, operating with that effect, have been upheld, as against all objections on the ground that they deprived parties of vested rights, or impaired the obligation of contracts. The very point was so decided in the following cases: Curtis v. Leavitt, 15 N. Y. 9; Savings Bank v. Allen, 28 Conn. 97; Welch v. Wadsworth, 30 Conn. 149; Andrews v. Russell, 7 Blackf. 474; Wood v. Kennedy, 19 Ind. 68; Town of Danville v. Pace, 25 Grat. 1; Parmelee v. Lawrence, 48 Ill. 331; Woodruff v. Scruggs, 27 Ark. 26. * * * And these decisions rest upon solid ground. Independent of the nature of the forfeiture as a penalty, which is taken away by a repeal of the act, the more general and deeper principle on which they are to be supported is, that the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation; and that whatever the statute

gives, under such circumstances, as long as it remains in fieri, and not realized by having passed into a completed transaction, may, by a subsequent statute, be taken away. It is a privilege that belongs to the remedy, and forms no element in the rights that inhere in the contract. The benefit which he has received as the consideration of the contract, which, contrary to law, he actually made, is just ground for imposing upon him, by subsequent legislation, the liability which he intended to incur. That principle has been repeatedly announced and acted upon by this court. Read v. Plattsmouth, 107 U. S. 568; and see Lewis v. McElvain, 16 Ohio, 347; Johnson v. Bentley, Ib. 97; Trustees v. McCaughy, 2 Ohio State, 152; Satterlee v. Mathewson, 16 S. & R. 169; S. C. in error; 2 Pet. 380; Watson v. Mercer, 8 Pet. 88. * * * The right which the curative or repealing act takes away in such case is the right in the party to avoid his contract, a naked legal right which it is usually unjust to insist upon, and which no constitutional provision was ever designed to protect. Cooley Constitutional Limitations, 378, and cases cited."

In Gibson v. Sherman County, 97 Neb. 79, 149 N. W. 107, this court cited and quoted from Ewell v. Daggs, *supra*, with approval.

In Matthews v. Guenther, 120 Neb. 742, 235 N. W. 98, this court said: "In Gibson v. Sherman County, 97 Neb. 79, this court, speaking through Sedgwick, J., has approved the doctrine as to usury announced by the supreme court of the United States in Ewell v. Daggs, 108 U. S. 143, in effect holding, 'the right of a defendant to avoid his contract is given to him by statute, for purposes of its own, and not because it affects the merits of his obligation,' and its penalties will be limited, supported and continued only when, and to the extent, the express terms thereof provide.'"

The foregoing authorities establish that there is no vested right in a usury statute. Lincoln Building & Saving Assn. v. Graham, 7 Neb. 173, which holds to the con-

trary; and upon which the plaintiffs rely, must be considered as having been overruled in view of the subsequent decisions of this court which have been discussed.

These same authorities establish that the repeal of a usury statute by a retroactive act does not impair the obligation of a previous contract. In fact, to contend otherwise involves a contradiction in terms. By removing the statutory ban to the enforcement of the contract, the repealing act confirms the obligation which the parties assumed and permits its enforcement in accordance with the agreement of the parties. The rule is stated in 16A C. J. S., Constitutional Law, § 361, p. 31, as follows: "A statute may not be declared unconstitutional on the ground that it gives binding force to a voluntary agreement void or unenforceable when made. Acts validating usurious loans and those perfecting defective conveyances may be mentioned as examples of this class of legislation."

The following which appears in McNair v. Knott, 302 U. S. 369, 58 S. Ct. 245, 82 L. Ed. 307, is applicable here: "There is nothing novel or extraordinary in the passage of laws by the Federal Government and the States ratifying, confirming, validating, or curing defective contracts. Such statutes, usually designated as 'remedial,' 'curative,' or 'enabling,' merely remove legal obstacles and permit parties to carry out their contracts according to their own desires and intentions. Such statutes have validated transactions that were previously illegal relating to mortgages, deeds, bonds, and other contracts. Placing the stamp of legality on a contract voluntarily and fairly entered into by parties for their mutual advantage takes nothing away from either of them. No party who has made an illegal contract has a right to insist that it remain permanently illegal. Public policy cannot be made static by those who, for reasons of their own, make contracts beyond their legal powers. No person has a vested right to be permitted to evade contracts which he

has illegally made." See, also, Gross v. United States Mortgage Co., 108 U. S. 477, 2 S. Ct. 940, 27 L. Ed. 795; Petterson v. Berry, 125 F. 902.

The Legislature has the power, by the retroactive repeal of a previous law, to validate contracts which were illegal when made. This rule is stated in Restatement, Contracts, § 609, p. 1128, as follows: "A bargain that is illegal when formed does not become legal * * * by reason of a change of law, except where the Legislature manifests an intention to validate the bargain." Illustration 2 which appears under section 609 is as follows: "A borrows money from B, promising to pay a rate of interest forbidden by law. Later, but before the time for performing the bargain, a statute is passed allowing such interest. Unless a purpose is manifested in the statute to validate existing bargains, the bargain remains illegal * * *." See, also, 6 Williston on Contracts (Rev. Ed.), § 1758, p. 4992.

The intention of the Legislature to validate existing contracts is expressed in section 5 of L. B. 17 which provides that the act shall apply to all transactions made prior to the effective date of the act except where an action on such a transaction has been reduced to final judgment.

The plaintiffs argue that a contract made in violation of the Installment Loan Act prior to its amendment by L. B. 17 was absolutely void and the Legislature cannot create a contractual liability where none existed before. This argument assumes that a contract made in violation of the statute prior to its amendment by L. B. 17 was void in the sense that no one could acquire any rights or liabilities under it and that it was completely unenforceable.

This question was considered and determined in Commonwealth Trailer Sales, Inc. v. Bradt, 166 Neb. 1, 87 N. W. 2d 705, 70 A. L. R. 2d 1397. In that case the plaintiff claimed the right to possession of a house trailer

under a chattel mortgage given to secure a loan made in violation of the Installment Loan Act. The defendant claimed possession of the trailer under an order of attachment obtained by a judgment creditor of the mortgagor. The defendant contended that the loan was absolutely void and that the mortgage could not be enforced. This court held that the defense arising under the Installment Loan Act was personal to the borrower and his privies and that the mortgage was valid as against the defendant. This court said: "The general rule is that the defense of usury is for the benefit of the borrower and is personal to him. See, 91 C. J. S., Usury, § 71, p. 648; 55 Am. Jur., Usury, § 121, p. 409. * * * As stated in 91 C. J. S., Usury, § 71, p. 648: 'Since usury laws are enacted for the protection of needy borrowers, and not to punish extortion in money lenders, the defense of usury is purely personal to the borrower, or those in privity with him, as discussed infra § 126, such as the debtor's sureties, guarantors, heirs, devisees, and personal representatives. This is true whether the statutes declare the contract void in whole or only to the extent of the usury, or whether a penalty is given for the taking. In order to question the validity of a usurious contract, the right must be based on the original debtor's right.' * * * We held in Cheney v. Dunlap, 27 Neb. 401, 43 N. W. 178, 5 L. R. A. 465, that: 'The plea of usury as a defense is personal to the borrower and his sureties and privies.' * * * That is, persons in privity with a borrower have the right to attack a transaction as usurious. 91 C. J. S., Usury, § 126, p. 714; 55 Am. Jur., Usury, § 122, p. 410. But strangers thereto may not take advantage thereof. 91 C. J. S., Usury, § 125, p. 713. As stated in 91 C. J. S., Usury, § 124, p. 712: '* * * even though the taking of usury is prohibited and is made punishable as a misdemeanor, the usurious contract will not be void as to third persons.' * * * It is true that the Legislature has broadened the scope of the effect of usury, as it relates to installment loans, in com-

parison to what it was and now is in the case of ordinary loans. See § 45-105, R. R. S. 1943. But it does not appear that the Legislature, by the enactments relating to installment loans, has extended the scope thereof as to those to whom it is available as has been previously fixed and determined by this court. If the Legislature intended to do so it could have easily done so by proper language. It is neither the privilege nor the desire of this court to do so in the absence thereof for what is usury, and the effect thereof, is a subject for the Legislature."

A dissenting opinion was filed which took the position that the effect of the statute was to declare the loan absolutely void and that it was unenforceable as against anyone. A concurring opinion was filed which stated as follows: "We agree with the majority opinion. However, in view of the dissent we desire to point out the fallacy of its reasoning. The general usury law of this state since 1879 has provided that if interest is contracted for, received, or reserved, in excess of the maximum fixed by law, no interest is collectible. Under the holdings of this court, only the debtor and those in privity with him could avail themselves of the benefits of this statute. Under the Installment Loan Act, if usurious interest is contracted for, received, or reserved, neither interest nor the principal is collectible. The penalty for the violation of the usury provisions has been increased, but the rule that the defense of usury is available only to the debtor and his privies has not been changed. Such a change is a proper subject of legislation and not one that properly can be made effective by judicial pronouncement."

The decision in the Bradt case was reaffirmed in a recent opinion of this court. In Rader v. Burnett, 175 Neb. 663, 122 N. W. 2d 747, this court held that a contract of conditional sale, illegal because in violation of the Installment Loan Act, was enforceable as against an assignee of the purchaser. The Bradt case was cited

with approval and this court held that the defense of usury under the Installment Loan Act is personal to the borrower and those in privity with him.

In both the Bradt case and the Rader case this court relied upon decisions in which the general interest statute (§ 45-105, R. R. S. 1943) was applicable, and arrived at the same result that is reached in those cases in which the general interest statute is applicable. The Bradt case and the Rader case establish that violation of the Installment Loan Act is a defense, and only a defense, which is available to the borrower and his privies, and that a contract made in violation of the Installment Loan Act is enforceable as against all others except the original purchaser and his privies. Consequently, such contracts are not void in the sense that no one can acquire any rights or obligations under them.

We conclude that L. B. 17 is a valid and constitutional act of the Legislature and that it is applicable to this action.

The judgment of the district court is affirmed.

AFFIRMED.