INDUSTRIAL CREDIT COMPANY, a
Corporation, Appellant,

v.

Maurice BERG, June Berg and Howard
James, Appellees.

No. 18788.

United States Court of Appeals
Eighth Circuit.

Jan. 30, 1968.

836

Flavel A. Wright, of Cline, Williams, Wright, Johnson, Oldfather & Thompson, Lincoln, Neb., for appellant and filed brief.

Norman Krivosha, of Ginsburg, Rosenberg, Ginsburg & Krivosha, Lincoln, Neb., for appellee and filed brief.

Before VOGEL, Chief Judge, and MATTHES and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

Industrial Credit Company (Industrial), a Minnesota corporation, instituted this diversity action in two counts to replevin property and recover a balance due on a retail installment sales contract signed and delivered by appellees, Maurice Berg and June Berg, to Midwest Laundry Equipment Corporation (Midwest), who in turn for value paid assigned the contract to appellant.[1]

The district court granted appellees' motion for summary judgment and dismissed the action on its merits with prejudice. Unfortunately, the court failed to articulate the premise for its action, but merely recited that "there is no genuine issue as to any material fact in this case and [therefore] * * * defendants are entitled to a judgment as a matter of law." This appeal followed.

The controlling facts are not in dispute. On or about February 18, 1960 Midwest sold to the Bergs certain laundry equipment in connection with their operation of a self-service laundry. This transaction was evidenced by a document styled a "Retail Installment Contract." On or about the same date Midwest assigned the contract, with recourse, to Industrial for a valuable consideration.

The questions presented for determination on this appeal are focused in part upon the scope and effect of a judgment rendered by the Supreme Court of Nebraska in Berg v. Midwest Laundry Equipment Corporation, 175 Neb. 423, 122 N.W.2d 250 (1963) (Berg I). In

---

1. Howard James was joined as a party defendant on the ground that he purportedly purchased the equipment from the Bergs for a price of $26,000.00 on or about June 29, 1964.

that case the Bergs brought an action to declare their retail installment contract void, and to recover the payments made under the contract. Plaintiffs' theory revolved around the fact that the financing charges specified in the contract were in excess of the maximum nine percent per annum statutory charge permitted by the Nebraska Installment Loan Act, Neb.Rev.Stat. § 45–138 (1943), and therefore the contract was void. In that action Industrial was named as a party defendant. Industrial unsuccessfully challenged the jurisdiction of the court over its person by means of a special appearance. Thereafter Industrial proceeded to defend the action on its merits, while at all times preserving its jurisdictional contention.

On appeal the Supreme Court of Nebraska ruled that the evidence failed to demonstrate that Industrial was doing business in Nebraska, and therefore the attempted service of process on it was ineffective to confer jurisdiction to determine the validity of the installment sales contract as to Industrial:

"\* \* \* This disposes of the case so far as Industrial Credit Company is concerned.

"The remaining questions concern the right of the plaintiffs to recover the amounts paid to Midwest Laundry Equipment Corp. under the contract. That depends upon a determination as to the validity of the contract as between these parties. *Since there is no jurisdiction over the person of Industrial Credit Company, no determination can be made as to the validity of the contract as between the plaintiffs and Industrial Credit Company in this action.*" 122 N.W.2d at 252. (Emphasis added.)

In deciding the controversy between Midwest and the Bergs in favor of the latter the Nebraska Supreme Court stated:

"The Installment Loan Act as amended prohibits any charge in excess of 9 percent per annum where the indebtedness is in excess of three thousand dollars. Section 45–138, R.R.S. 1943. The charge which was made is in excess of 9 percent per annum. The contract is, therefore, void." Id. at 254.

On a motion for rehearing Midwest contended that the downpayment made by the Bergs did not constitute part of the installment loan contract and therefore should not be refunded to them. Since this question had not been raised or argued the opinion in *Berg I* was modified and the cause was remanded to the district court for a determination of the amount of the payments made by the Bergs to Midwest, and whether the Bergs could recover these amounts from Midwest in view of the declared invalidity of the contract. Berg v. Midwest Laundry Equipment Corp., 175 Neb. 874, 124 N.W.2d 699 (1963) (Berg II).[2]

The basic question at issue—whether appellant is precluded from maintaining an action on the contract—can be brought into focus only by a consideration of the history of the law of Nebraska relating to installment sales.

The Nebraska Supreme Court in a long line of decisions had consistently held that a time sale of personal property made in good faith at a price in excess of the cash price was not in violation of the usury laws, even though the differential between the two prices exceeded the lawful interest for a loan.[3] See,

---

**2.** Pursuant to the mandate of *Berg II* the trial court computed the amount of the downpayment and ordered Midwest to refund the same to the Bergs. In Berg v. Midwest Laundry Equipment Corp., 178 Neb. 770, 135 N.W.2d 457 (1965) (Berg III), cert. denied, 382 U.S. 974, 86 S.Ct. 539, 15 L.Ed.2d 466 (1966), the Supreme Court reversed the judgment of the trial court insofar as it ordered

a refund to the Bergs on the ground that the Installment Loan Act did not affect the validity of a downpayment made in conjunction with the execution of an usurious loan.

**3.** A transaction was not considered a valid time sale made in good faith unless the seller had informed the buyer, at the time of the sale, of both the cash

e. g., Elder v. Doerr, 175 Neb. 483, 122 N.W.2d 528, 532–533 (1963); Trailmobile, Inc. v. Hardesty, 173 Neb. 46, 112 N.W.2d 535, 539 (1961); Grand Island Finance Co. v. Fowler, 124 Neb. 514, 247 N.W. 429, 431 (1933). At the same time, however, the Supreme Court pierced the form of an installment sales transaction which, although ostensibly a valid time sale, was in substance an artifice designed to evade the usury laws. It was essentially a question of fact as to whether a particular transaction was a time sale made in good faith or a loan of the unpaid balance of a cash purchase price. Berg v. Midwest Laundry Equipment Corporation, 122 N.W.2d at 252; Trailmobile, Inc. v. Hardesty, supra, 112 N.W.2d at 538. If a transaction characterized as an installment sales contract was in reality a loan, the transaction was void if the amount of interest and carrying charges exceeded the permissible rate of interest specified in the Nebraska Installment Loan Act.[4] In addition, the lender incurred a total forfeiture of all principal, interest and other charges as a penalty for its violation.

In an apparent effort to mitigate the harshness of these forfeitures in installment transactions, the legislature enacted the Nebraska Installment Sales Act, effective September 27, 1959, which fixed the permissible rates of interest and other charges which could be used in computing the time price differential between a cash and credit sale.[5] The life of this Act, however, was brief. In Elder v. Doerr, supra, the Nebraska Supreme Court declared the Act unconstitutional as special legislation, and again held that an installment sales contract, which was not a valid time sale, was void as an usurious loan, if the time price differential exceeded the maximum rate of interest permitted by the Installment Loan Act. A subsequent decision reached the same result with respect to the 1963 Installment Sales Act. Stanton v. Mattson, 175 Neb. 767, 123 N.W.2d 844 (1963).

In order to cope with the resulting commercial anxiety and frustration that accompanied the invalidation of installment sales transactions that had conformed to the Installment Sales Act, the Seventy-Fourth (Extraordinary) Session of the Nebraska Legislature enacted L.B. 17.[6] This law became effective November 15, 1963 and amended the Installment Loan Act to provide that a loan made in violation of the Act would not on that account be void, but that the lender would have no right to collect or receive any interest or charges, and any interest or other charges which had been collected would be forfeited and refunded to the borrower. In addition, L.B. 17 also provided that its provisions would apply retroactively to all transactions executed prior to the effective date of the Act except where an action on the transaction had been reduced to a final judgment on the effective date of the Act.

The constitutionality of L.B. 17, particularly its retroactive provisions, was upheld in Davis v. General Motors Acceptance Corporation, 176 Neb. 865, 127 N.W.2d 907 (1964). See also Sones v. Spiegal, 179 Neb. 838, 140 N.W.2d 799 (1966); White Motor Co. v. Reynolds, 179 Neb. 91, 136 N.W.2d 437 (1965); Dailey v. A. C. Nelsen Company, 178 Neb. 881, 136 N.W.2d 186 (1965); Ko-

and time sale prices, and allowed him to choose between them. Commonwealth Company v. Fauver, 169 Neb. 795, 101 N.W.2d 150, 152 (1960); Thompson v. Commercial Credit Equipment Corp., 169 Neb. 377, 99 N.W.2d 761, 765 (1959).

4. Robb v. Central Credit Corporation, 169 Neb. 505, 100 N.W.2d 57 (1959); Thompson v. Commercial Credit Equipment Corp., supra; State ex rel. Beck v. Associates Discount Corporation, 168 Neb.

298, 96 N.W.2d 55 (1959); Curtis v. Securities Acceptance Corporation, 166 Neb. 815, 91 N.W.2d 19 (1958).

5. Neb.Rev.Stat. §§ 45–301 to 45–312 (1959). The contract upon which appellees based their action in *Berg I* was consummated on February 18, 1960 and in form met the requirements of the Nebraska Installment Sales Act.

6. Chapter 9, Laws of Nebraska 1963, Special Session, page 103.

metscher v. Wade, 177 Neb. 299, 128 N. W.2d 781 (1964).

In capsule form this case comes before us in this posture.

1. In 1959 the legislature enacted the Nebraska Installment Sales Act.

2. The Midwest-Berg retail installment contract, executed in conformity with the provisions of the Installment Sales Act, was consummated on or about February 18, 1960 and assigned for value on that date to Industrial.

3. In 1963 the Nebraska Supreme Court declared the Installment Sales Act unconstitutional and held that installment sales contracts, which were not valid time sales, were void if made in violation of the Nebraska Installment Loan Act.

4. On June 14, 1963 the Nebraska Supreme Court in *Berg I* held that the retail installment contract actually evidenced a loan for the unpaid balance of the purchase price, and being usurious under the provisions of the Installment Loan Act, was void as between Midwest and the Bergs. The Court, however, made no determination as to the status of the contract between the Bergs and Industrial for the reason that the Court lacked jurisdiction over Industrial.

5. L.B. 17, effective November 15, 1963, validated such installment transactions executed prior to that date, except where an action on the transaction had been reduced to final judgment on or prior to the effective date.

In this factual setting three basic questions are presented for our determination:

### I.

Was the Midwest-Berg installment sales contract wholly void from its inception so that Industrial is deprived of the right to obtain an adjudication of the interest, if any, which it acquired in the contract?

### II.

Is Industrial's present action barred under the principles of res judicata or the conceptually related doctrine of collateral estoppel by the judgment in *Berg I* by virtue of its alleged privity with Midwest, even though that judgment expressly disclaimed any determination of Industrial's rights?

### III.

Is the judgment in *Berg I* conclusive as to Industrial in view of its participation in the defense of that action?

### I.

Appellees submit that the installment contract was wholly void from its inception so that no one could acquire any rights or liabilities thereunder. This contention, if valid, would necessarily mean that an assignee for value or even a holder in due course without notice of any infirmity in the contract would acquire no enforceable rights under it and therefore would be barred from obtaining a binding adjudication of his interest in the instrument by a court of competent jurisdiction.

Prior to the enactment of L.B. 17 by the Nebraska Legislature Section 45–155 of the Installment Loan Act provided:

"violations of sections 45–114 to 45–155 in connection with any indebtedness, however acquired, shall render such indebtedness void and uncollectible."

Appellees argue that this language clearly voids an usurious contract ab initio for all purposes. The Supreme Court of Nebraska, moreover, has used rather sweeping language in several decisions to the effect that transactions which violate the provisions of the Installment Loan Act would be void even in the hands of holders in due course.[7] See, e. g., State ex rel. Beck v. Associates Discount Corporation, 168 Neb. 298, 96 N. W.2d 55, 70 (1959); Robb v. Central

---

7. The same Court, however, has held a similar transaction valid and enforceable against an assignee of the purchaser, even though such a transaction was void as to the purchaser himself. See Rader v. Burnett, 175 Neb. 663, 122 N.W.2d 747 (1963), discussed infra.

Credit Corporation, supra, 100 N.W.2d at 64. In each of these situations, however, either the assignee or holder in due course of the installment contract was properly a party to the litigation and therefore bound by the judgment declaring the instrument void. Neither case stands for the proposition that a transaction which violates the provisions of the Installment Loan° Act is, absent an adjudication to that effect, void as to any and all persons who may have acquired an interest in the contract.

The history of the prior litigation in *Berg I* as well as the evolution of Nebraska Law relating to installment sales contracts demonstrates the fallacy of appellees' theory. In the first place Industrial, an assignee of the contract, was not within the jurisdiction of the Nebraska Supreme Court in *Berg I* and therefore not properly a party. Nor was Industrial bound by that determination on the basis of an agency relationship, since the Supreme Court expressly held that Midwest was not its agent. Secondly, the Court explicitly refrained from making a determination as to the validity of the contract as between the Bergs and Industrial. 122 N.W.2d at 252. If, as appellees submit, the contract was ipso facto void as to everyone, the Court would have had little reason to reserve judgment as to Industrial's rights in that contract.

In our view the very enactment of L.B. 17 dissipates the effectiveness of appellees' argument. As stated above, that legislation modified the penalty provisions of the Installment Loan Act and validated installment contracts which had formerly contravened its provisions. If such contracts were absolutely void, we would seriously doubt the validity of any legislative action that would retroactively create contractual rights and obligations which did not previously exist. The validity and constitutionality of L.B. 17, however, was sustained in the face of this very same argument in Davis v. General Motors Acceptance Corporation, supra, wherein the court stated:

"The plaintiffs argue that a contract made in violation of the Installment Loan Act prior to its amendment by L.B. 17 was absolutely void and the Legislature cannot create a contractual liability where none existed before. This argument assumes that a contract made in violation of the statute prior to its amendment by L.B. 17 was void in the sense that no one could acquire any rights or liabilities under it and that it was completely unenforceable." 127 N.W.2d at 915.

In *Davis* the court rejected the void ab initio argument on the rationale that only the borrower and those in privity with him had the right to avoid an usurious contract under the provisions of the Installment Loan Act. If the borrower's interest had been transferred to third persons who were not in privity with him, the contract remained a subsisting, enforceable obligation notwithstanding the fact that it was usurious. Since the defense of usury was considered personal, it was entirely possible under Nebraska law for strangers to an otherwise usurious contract to acquire enforceable rights and duties under it. See, e. g., Rader v. Burnett, supra (usurious conditional sales contract held enforceable against assignee of purchaser); Commonwealth Trailer Sales, Inc. v. Bradt, 166 Neb. 1, 87 N.W.2d 705, 70 A.L.R.2d 1397 (1958) (chattel mortgage given to secure loan made in violation of Installment Loan Act held enforceable against sheriff's attachment in behalf of judgment creditor).

■ For the above reasons we reject appellees' argument that the contract executed between the Bergs and Midwest was void ab initio so that Industrial is barred from obtaining an adjudication of any rights it may have in that contract.

II.

Since the doctrines of res judicata and collateral estoppel are of key importance in determining whether Industrial is foreclosed by the judgment in *Berg I* from maintaining the present action, we shall first consider these doctrines briefly and the circumstances warranting their application.

■ The vital distinction between these two doctrines has been succinctly stated by the Supreme Court in Lawlor v. National Screen Service Corp., 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed. 1122 (1955):

"[U]nder the doctrine of *res judicata*, a judgment 'on the merits' in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether it was based on the same cause of action as the second suit." 349 U.S. at 326, 75 S.Ct. at 867.

See also Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597–598, 68 S.Ct. 715, 92 L.Ed. 898 (1948); State ex rel. Weasmer v. Manpower of Omaha, Inc., 163 Neb. 529, 80 N.W.2d 580, 584 (1957).

■■ The scope of the res judicata bar encompasses not only issues actually litigated in the first suit, but also those issues which could have been raised in that suit. Collateral estoppel, on the other hand, operates as a bar in a second suit between the same parties or those in privity with them only with respect to those basic issues adjudicated in the former suit which were necessary to the judgment rendered therein. See, e. g., Morgan v. Inter-Continental Trading Corporation, 360 F.2d 853, 855 (7th Cir. 1966); Nelson v. Swing-A-Way Manufacturing Company, 266 F.2d 184, 186–187 (8th Cir. 1959); Ballard v. First National Bank of Birmingham, 259 F.2d 681, 683–684 (5th Cir. 1958).

■ Appellees posit the argument that Industrial, as assignee of Midwest, stood in privity with the latter, and therefore could acquire no greater rights in the contract than its assignor. From this premise they contend that Industrial is judicially estopped to relitigate the status of a contract that was declared void in the hands of Midwest Laundry and to whose rights it succeeded as assignee. The fallacy of appellees'

theory lies in their attempt to bind Industrial by a final judgment that expressly excluded it and adjudicated only the rights of Midwest and the Bergs. See Berg v. Midwest Laundry Equipment Corporation (Berg I), supra. In our view to accept appellees' position would expressly contravene the judgment of the Nebraska court that its determination in no way bound Industrial.

■ Appellees, moreover, cannot predicate their argument that Industrial is in privity to the determination of Midwest's rights in the contract solely on the fact that Industrial was an assignee of that contract. What appellees fail to acknowledge is the point in time at which Industrial acquired its interest under the contract. The term "privity" refers to a mutual or successive relationship to the same interest in property. Consumers Public Power Dist. v. Eldred, 146 Neb. 926, 22 N.W.2d 188, 194 (1946). Ordinarily, a person in privity with a party to a lawsuit, in the sense that he will be bound by a judgment for or against that party under principles of res judicata or collateral estoppel, must acquire his interest in the transaction after commencement of the action or rendition of the judgment. See, e. g., Lesser v. Migden, 328 F.2d 47, 50 (2d Cir. 1964); United States v. New York Terminal Warehouse Co., 233 F.2d 238, 240 (5th Cir. 1956); Tillman v. National City Bank of New York, 118 F.2d 631, 633–634 (2d Cir. 1941), cert. denied, 314 U.S. 650, 62 S.Ct. 96, 86 L.Ed. 521 (1941); Walter E. Heller & Company v. Mall, Inc., 267 F.Supp. 343, 350–351 (E.D.La.1967); Savini v. Sheriff of Nassau County, 209 F.Supp. 946, 951–952 (E.D.N.Y.1962). Similarly if an assignee's interest attaches prior to the litigation, he is not, absent other circumstances establishing a privity relationship, regarded as in privity with his assignor so as to be affected by a judgment against the latter with respect to that interest, unless he has been made a party to that judgment. Restatement, Judgments § 89 (1942); 1 Freeman, Judgments §§ 439–40 (5th ed. 1925); Wight v. Chandler, 264 F.2d 249, 253 (10th Cir. 1959); National Lead Co. v.

Nulsen, 131 F.2d 51, 56–57 (8th Cir. 1942), cert denied, 318 U.S. 758, 63 S.Ct. 533, 87 L.Ed. 1131 (1943); Vasu v. Kohlers, Inc., 145 Ohio St. 321, 61 N.E.2d 707, 719, 166 A.L.R. 855 (1945); cf. Chase National Bank v. City of Norwalk, 291 U.S. 431, 438, 54 S.Ct. 475, 78 L.Ed. 894 (1934); Old Colony Trust Co. v. City of Omaha, 230 U.S. 100, 122, 33 S.Ct. 967, 57 L.Ed. 1410 (1913); Henschke v. Christian, 228 Minn. 142, 36 N.W.2d 547, 550 (1949).

In this case Industrial as assignee concededly acquired its interest in the Berg installment contract prior to the litigation in *Berg I*. We are mindful that there conceivably may be situations where an assignee is in privity to the adjudication of his assignor's rights, even though he occupied that status prior to the adjudication. If the facts, for example, had disclosed that Midwest had acted throughout this transaction as agent for Industrial or in collusion with it, a different determination might well be warranted. The district court, however, made no findings of fact on the issue of privity. We find nothing in the record, moreover, suggesting the presence of other circumstances upon which a finding of privity can be predicated. We do not intend by our determination here to foreclose appellees from their right to establish privity in a trial of this case. As indicated, this case comes to us solely on the grant of a motion for summary judgment. We believe the summary judgment procedure adopted by the district court to be an inappropriate vehicle for the disposition of this case. On this record, we simply cannot say, as a matter of law, that Industrial is in privity with Midwest or is otherwise bound by the judgment against the latter on the basis of either res judicata or collateral estoppel.

### III.

We find no merit whatever in appellees' contention that Industrial, though not a proper party to the record in *Berg I*, is nonetheless bound by the judgment in that action by virtue of its participation in that litigation. In view

of the fact that the district court had expressly overruled its special appearance attacking the court's jurisdiction Industrial had no alternative but to defend the action. Since it was ultimately determined that the court lacked jurisdiction over Industrial, it would be contrary to all concepts of justice to hold that it is bound by the judgment because of its forced appearance and participation in the case.

In summary we hold that (1) Industrial is not barred from maintaining this action under the void ab initio theory; (2) Industrial is not bound by the judgment in *Berg I*.

Reversed and remanded.