# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2399

_____

National Music Museum: America's Shrine to Music

*Plaintiff - Appellee*

v.

Robert Johnson

*Defendant*

Larry Moss

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: June 14, 2018
Filed: September 14, 2018

_____

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The subject matter of this lawsuit is a Martin D-35 guitar that Elvis Presley played during his final tour in 1977.  He dropped the guitar during a show in St.

Petersburg, Florida, and gave the damaged guitar to an audience member. Robert Johnson, a blues guitarist and memorabilia broker, purchased the guitar in 2007. He delivered the Martin D-35 guitar to the National Music Museum: America's Shrine to Music (the Museum) in Vermillion, South Dakota, in February 2013, pursuant to a sales-donation agreement between Johnson and the Museum. Several months later, Larry Moss contacted the Museum, claiming that he had purchased the Martin D-35 guitar from Johnson in 2008 and thus was its rightful owner.

The Museum filed suit against Johnson and Moss in South Dakota state court, seeking a declaration that the Museum was the legal owner of the Martin D-35 guitar. Moss removed the case to federal district court,[1] which ruled in favor of the Museum. Johnson did not answer the complaint or otherwise appear in court. On appeal, Moss argues that because a Tennessee state court judgment declared Moss the owner of the guitar, the doctrines of res judicata or collateral estoppel barred the Museum from litigating the issue of ownership. He also contends that the district court erred in entering judgment in favor of the Museum. We affirm.

## I. Background

Moss began collecting celebrity autographs in 1973 and later began collecting memorabilia. He described his collecting as "a hobby and a passion . . . not a business." Moss met Johnson in the early 1980s, when their shared interest in music and memorabilia led to a friendship and a buyer-broker relationship. Moss estimated that he purchased between fifteen and twenty items through Johnson.

During the summer of 2007, Johnson told Moss that three guitars associated with Elvis—including the Martin D-35 guitar—might be available for $95,000. Moss

_____

[1] The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

expressed interest in purchasing the guitars, and Johnson began negotiating the terms of a sale with the third-party owner. Johnson called Moss during the negotiations, telling Moss that he was trying to negotiate a lower purchase price but that "[i]n the meantime, you need to wire me the money." Moss did not send money to Johnson, however, because Johnson never told him where or how to send the money. As Moss explained, "I never gave him the money. He never gave me any guitars. There was no deal."

In August 2007, Moss came across a news article featuring Johnson and the three Elvis-associated guitars, which Johnson apparently had acquired. Although Johnson had told Moss that the deal failed because Moss had not wired money, Moss was not surprised that Johnson somehow had the guitars in his possession, saying, "Whether the deal had gone south and he fixed it, . . . or whether he had done something else to get them at some point in time, I didn't know the details. It didn't make much difference." Moss later accused Johnson of lying about the original deal.

Despite their disagreements, Moss and Johnson remained friends and Moss remained interested in purchasing the Martin D-35 guitar. On February 12, 2008, Johnson met with Moss to discuss a new deal. Johnson offered to sell Moss four guitars: the Martin D-35 guitar, two additional guitars associated with Elvis, and a guitar that Sonny Burgess, a guitarist and singer of some renown, had owned. Johnson told Moss that the Martin D-35 guitar was being displayed at the Rock 'n' Soul Museum in Memphis, Tennessee, where it was on loan until January 2009.

Johnson and Moss ultimately agreed that Moss would pay Johnson $120,000 for the four guitars. The contract provided that Moss would pay Johnson $70,000 and take immediate possession of two guitars. It further stated that Moss would pay Johnson the remaining $50,000 upon delivery of the Martin D-35 guitar and the Sonny Burgess guitar. Johnson promised to deliver those guitars by April 12, 2009.

Johnson took the Martin D-35 guitar from the Rock 'n' Soul Museum in late 2008. Moss saw that the guitar was no longer on display when he visited the museum in early 2009. When Johnson did not deliver the guitar to Moss by April 12, 2009, Moss did not ask Johnson to deliver the guitar, he did not initiate a lawsuit to enforce the contract, and he did not tender the $50,000 that was due upon delivery of the Martin D-35 and the Sonny Burgess guitars.

A few months later, Moss noticed that the Martin D-35 guitar was being auctioned online. He contacted the auction house, which did not respond to his request that it be removed from auction. The guitar did not sell, and Moss did not respond to Johnson's December 2009 and June 2010 emails about the Martin D-35 guitar.

In July 2010, Johnson proposed that he and Moss enter into a partnership on the Martin D-35 guitar and two other guitars. Moss replied, "No thanks!" Days later, Johnson notified Moss that the Martin D-35 was being used as collateral and would be available to Moss only if Moss made a cash offer. Moss replied, "I'm screwed on the $70,000 that I paid you towards this whole Elvis guitar deal to begin with . . . ." Johnson quickly responded with the message, "PLEASE DO NOT CONTACT ME AGAIN."

In November 2010, Johnson contacted the Museum to discuss a possible donation of the Martin D-35 guitar to the Museum. The parties entered into a sales-donation agreement on February 6, 2013. Under the terms of the agreement, the Museum paid Johnson $250,000 for a Gibson Korina Explorer guitar that had been owned by John Entwistle of the musical group The Who. Johnson agreed to donate to the Museum certain memorabilia, including the Martin D-35 guitar. Johnson delivered the guitar to the Museum on or before February 6, 2013. Moss emailed the Museum in December 2013, claiming that he owned the Martin D-35 guitar.

Moss and Johnson's relationship deteriorated. In January 2014, Johnson filed suit against Moss in the Chancery Court of Shelby County, Tennessee, alleging claims of libel and defamation. In his February 13, 2014, counterclaim, Moss sought specific performance under the February 12, 2008, contract, alleging that "Johnson never made delivery" of the Martin D-35 guitar, that Moss was "ready, willing, and able to consummate the purchase of the remaining collectible guitars," and that specific performance was required because the Martin D-35 and the Sonny Burgess guitars were "one-of-a-kind collectible guitars." In January 2015, the Tennessee court ruled in favor of Moss, concluding that he was entitled to specific performance on his contract with Johnson. The court declared that Moss held "legal and equitable title to the Martin D-35 guitar . . . relating back to the date of contracting, February 12, 2008."

The Museum was not a party to the Tennessee litigation, and the South Dakota federal district court ruled that the Tennessee judgment did not preclude the Museum's declaratory judgment action. Following a bench trial, the court found that "Moss never acquired title to the Martin D-35" and that the Museum "is the owner of the Martin D-35." D. Ct. Order of Jan. 23, 2017, at 11.

## II. Discussion

Moss argues that the federal district court should have given preclusive effect to the Tennessee state court's judgment. Had the federal district court done so, it would have been bound by the determination that Moss—not the Museum—was the rightful owner of the Martin D-35 guitar, and it would have concluded that Johnson did not own the guitar when he purportedly donated it to the Museum.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" Edwards v.

City of Jonesboro, 645 F.3d 1014, 1019 (8th Cir. 2011) (quoting Kremer v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982)).  We review *de novo* the district court's application of Tennessee preclusion law.  Id. (standard of review); see Wong v. Minn. Dep't of Human Servs., 820 F.3d 922, 933 (8th Cir. 2016) (reviewing *de novo* the question whether res judicata or collateral estoppel applies).

Under Tennessee law, res judicata bars parties and their privies from litigating "the same cause of action with respect to all issues which were or could have been litigated in the former suit."  Hooker v. Haslam, 393 S.W.3d 156, 165 n.6 (Tenn. 2012) (emphasis omitted) (quoting Young v. Barrow, 130 S.W.3d 59, 64 (Tenn. Ct. App. 2003)).  Collateral estoppel "bars the same parties or their privies from relitigating in a later proceeding legal or factual issues that were actually raised and necessarily determined in an earlier proceeding."  Mullins v. State, 294 S.W.3d 529, 534 (Tenn. 2009).  It is undisputed that the Museum was not a party to the Tennessee action.[2]  Accordingly, for the Museum to be barred from litigating the question of ownership of the Martin D-35 guitar, it must have been in privity with Johnson.

Ordinarily, to be in privity with a party to a lawsuit and thus be bound by a judgment against that party, "a person . . . must acquire his interest in the transaction after commencement of the action or rendition of the judgment."  Indus. Credit Co. v. Berg, 388 F.2d 835, 841 (8th Cir. 1968).  If the person's interest attached before litigation commenced, "he is not, absent other circumstances establishing a privity relationship, regarded as in privity with his assignor so as to be affected by a judgment against the latter with respect to that judgment."  Id.  By the time the Tennessee litigation commenced in 2014, Johnson had already delivered the Martin

---

[2]To the extent Moss argues that the Museum was required to intervene as a party in the Tennessee litigation, we disagree.  See Black Clawson Co. v. Kroenert Corp., 245 F.3d 759, 764 (8th Cir. 2001) (explaining that a party against whom res judicata is asserted is not "required to intervene voluntarily in a separate pending suit merely because it is permissible to do so").

D-35 guitar to the Museum pursuant to the sales-donation agreement. Johnson and the Museum thus were not in privity when the Tennessee state court issued its judgment against Johnson. We conclude that the Museum is not bound by the Tennessee judgment and that the federal district court properly reached the merits of the present case.

In so concluding, we find inapposite Moss's argument that the Tennessee judgment was retroactive and vested title in Moss as of February 12, 2008. The Tennessee judgment against Johnson does not establish privity between Johnson and the Museum. To hold otherwise would merely enforce the Tennessee judgment against the Museum, without any inquiry into whether the Museum and Johnson were in privity when the Tennessee court ruled against Johnson. See Postal Tel. Cable Co. v. City of Newport, 247 U.S. 464, 475 (1918) ("[N]othing which the grantor can do or suffer after he has parted with the title can affect rights previously vested in the grantee, for there is no longer privity between them.").

Turning to the merits of the federal lawsuit, Moss argues that title to the Martin D-35 guitar passed to him when he entered into the contract with Johnson on February 12, 2008. Moss claims that constructive delivery of the guitar was sufficient to pass title because the guitar was on display at the Rock 'n' Soul Museum and Moss assured Johnson that he would allow it to remain there.

Under Tennessee law, "[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods." Tenn. Code Ann. § 47-2-401(2). "[W]here delivery is to be made without moving the goods," however, title passes at the time of contracting "[i]f the goods [have been] identified and no documents of title are to be delivered." Id. § 47-2-401(3)(B).

-7-

The February 12, 2008, contract between Moss and Johnson provided that Moss would pay $50,000 "upon delivery" of the Martin D-35 and the Sonny Burgess guitars. The contract further stated that "Johnson guarantees that he will deliver to Moss both items . . . on or before April 12, 2009; and Moss guarantees that he will pay the balance of $50,000 when that delivery occurs." Even assuming that Moss verbally agreed to the Martin D-35 guitar's continued display at the Rock 'n' Soul Museum, the contract itself required physical delivery of the guitar. Nothing in the contract indicated that delivery was to be made without physically moving the guitar. Because Johnson never delivered the Martin D-35 guitar to Moss, Moss never acquired title to it. Accordingly, we uphold the district court's determination that Johnson had title to the Martin D-35 guitar when he transferred the guitar to the Museum and that the Museum owns the Martin D-35 guitar.

The judgment is affirmed.

_____